**Rickey C. SMITH, Appellant,**

v.

**THE KANSAS CITY SOUTHERN RAILWAY COMPANY, Respondent.**

**No. WD 59676.**

Missouri Court of Appeals, Western District.

June 28, 2002.

As Modified Oct. 1, 2002.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 1, 2002.

Application for Transfer Denied Nov. 26, 2002.

Gene C. Napier, Christopher Leach, Charles Gordon, Kansas City, for appellant.

Harlan D. Burkhead, L.J. Buckner, Jr., Mara Cohara, Kansas City, for respondent.

RONALD R. HOLLIGER, Judge.

Appellant Rickey C. Smith (hereinafter "Smith") appeals from a judgment after jury verdict in favor of respondent Kansas City Southern Railway Company (hereinafter "KCS") on his claim for personal injuries pursuant to the Federal Employers Liability Act (FELA), 45 U.S.C. § 51, et seq. Smith raises three points on appeal. First, he contends that the trial court erred by excluding as a witness a former employee of KCS because of an ex *parte* contact with the witness which KCS claimed violated the rule of professional conduct for attorneys barring contact with represented parties. Secondly, he claims that the trial court erred in admitting evidence of Smith's disability benefits under the Railroad Retirement Act, which Smith claims was inadmissible under the "collateral source rule." Finally, he claims that he was entitled to a new trial because of a claimed non-disclosure by a juror of prior litigation experience. We hold that Missouri Rule of Professional Conduct 4–4.2 did not prohibit contact between Smith's counsel and the former employee witness. The trial court, therefore, erred in preventing Smith from calling the witness as a penalty for a perceived violation of the Rule. Because this point is dispositive and the other alleged errors are not likely to reoccur upon retrial, the cause will be reversed on that point alone and remanded for new trial.

On July 8, 1998, while he was in the employ of KCS, Smith was injured as he attempted to open a door on a ballast car.

In his petition, Smith alleged that KCS should be held liable under FELA because KCS had failed to: (1) properly maintain, inspect, and lubricate the ballast car doors; and (2) had failed to promulgate and enforce safety rules, regulations, and bulletins to insure the proper maintenance and inspection of ballast car doors.

## Circumstances of Smith's Injury

Plaintiff was injured while working as a trackman for KCS. He was assisting a section gang unload ten cars filled with ballast near Vivian, Louisiana. Ballast is the rock used to fill voids under railroad ties and forms part of the foundation for the track. When a repair is necessary, the ballast car is positioned over the area of track where ballast is needed. The ballast doors are then opened, allowing the ballast to pour out into the area needing repair.

The series of railroad cars in question had been retrofitted in 1992 with ballast doors. These doors, according to the evidence adduced at trial, initially worked well and could be opened by a single worker using one hand. Over time, however, as the doors rusted, they would become progressively harder to open. There was evidence that numerous complaints were made to the railroad and the workers' union regarding the poor condition and lack of maintenance of the ballast doors. KCS apparently had no program of inspection and maintenance for the ballast doors.

The ballast door on the car to which Smith had been assigned had not been repaired since April 16, 1996. When Smith attempted to open the ballast door, he was initially unsuccessful. The door had rusted and deteriorated, leaving the latch stuck. Smith made several attempts to open the door with an unloading tool, to no avail. He then called for a co-worker to assist him. Smith and the co-worker together applied pressure with the unloading tool, in accordance with railroad procedure,[1] to attempt to force the door open. Their first attempt failed. On the second attempt,[2] however, the door opened, and the unloading tool sprang upward. The unloading tool lifted Smith. Smith felt an immediate pain over his back and down the back of at least one of his legs.

## Plaintiff's Damages

Smith was forty-six years old at the time he was injured, and he had been an employee of KCS for over twenty-four years. At the time of trial, Smith was living on his family farm. According to Smith's testimony, the accident rendered him "physically unable to farm, to maintain his yard and fences, to lift more than twenty-five pounds and to ride a tractor," as well as making it difficult for him to stand or sit for long periods.

There was evidence presented at trial on the issue of whether Smith's damages arose instead from a pre-existing condition or injury. KCS presented testimony from one of Smith's treating physicians, Dr. Ridlon, who had commented in Smith's patient record nine days before the accident that Smith was "complaining of some chronic low back pain and right [sciatica]." Dr. Ridlon also noted that Smith "had this [condition] for years."

Smith has taken courses at a junior college in an attempt to retrain himself, with the goal of opening a small gun parts business. He estimates that he was earn-

1. Smith alleges that there was evidence offered at trial that KCS expected workers to "do everything they could do to open the dump doors 'at whatever cost', regardless of company rules to the contrary."

2. The force Smith and his co-worker applied was apparently sufficient to bend the unloading tool.

ing roughly a third of the wages he earned while employed by KCS. There was expert testimony that Smith would not be able to return to work for KCS. The expert also testified that the nature of Smith's injury may preclude him from successfully functioning at less strenuous employment such as retail sales or office work. Evidence was also presented by Smith that he had suffered a net loss of earnings capacity in an amount between $783,653 and $584,884, reduced to present value.

### The Contact with the Former Employee

Billy Wayne House (hereinafter "House") was formerly a roadmaster (field supervisor) with KCS. House retired from KCS on June 30, 1998, roughly one week before Smith's accident. During his tenure with KCS, House had daily supervisory contact with Smith. KCS' counsel advised Smith's counsel on October 6, 2000, that House would testify that Smith had serious back problems long prior to the July 8,1998, injury. Three days afterwards, House spoke directly to Smith and advised Smith that KCS had asked him to testify to that effect, but that House did not believe it to be true. Smith's counsel claimed that House, concerned for himself and his son (who still worked for KCS), asked Smith if he would have his attorney contact him. House testified that he did not recall doing so.

Later, on October 9, 2000, Smith's counsel called House. House advised that he would testify that he never observed Smith having significant back problems, and agreed to sign a written statement to that effect. That written statement was obtained by Smith's counsel on October 12, 2000, and then provided to KCS' counsel

on October 13, 2000. After an exchange of correspondence, KCS filed a motion with the trial court seeking sanctions against Smith, arguing that Smith's counsel violated Rule 4–4.2 in making ex *parte* contact with House.

The trial court sustained KCS' motion, finding that Smith's counsel had violated Rule 4–4.2, because House had been employed in a management level position, and House's duties related to the situation involved in the pending litigation. The trial court further held that 45 U.S.C. § 60 did not override Rule 4–4.2, because the federal statute did not evidence a clear intent to displace state regulation of attorney conduct in this area. The trial court, consequently, excluded House's testimony from trial.

Smith made an offer of proof regarding House's excluded testimony. The relevant portions of House's testimony are as follows. House resided several miles from Smith and has known him for over twenty-three years. House had supervised Smith from 1993 until House retired in 1998. House stated that Smith had suffered a prior back injury several years earlier, which had apparently caused Smith some problems for a time. However, House stated that in the years prior to the accident, Smith had not missed work or avoided work complaining of back problems. At no point, House stated, did any other employee "carry" Smith or try to cover for him during the time that he had supervision over Smith. House also discussed the failure of KCS to maintain the dump doors on ballast cars.[3]

At trial, KCS offered the videotaped deposition testimony of T.L. Scott, who replaced House as Smith's supervisor after

---

**3.** KCS claims that this latter statement was not part of Smith's proffer but was instead in response to an inquiry by the trial court.

House retired. Scott's deposition testimony stated that House had informed him that Smith had had prior back problems. House, during the proffer, indicated that he may have mentioned the early 1990's back injury, but denied telling Scott that Smith had any continuing back problems. Smith objected to the admission of Scott's testimony as prejudicial given the court's ruling excluding House's testimony, as Smith was left unable to rebut Scott's testimony.

### Standard of Review

Smith suggests that the proper standard of review is that applied to the imposition of sanctions for a violation of the rules of discovery, *i.e.* an abuse of discretion standard. *State ex rel. Pitts v. Roberts,* 857 S.W.2d 200, 202 (Mo. banc 1993). Smith also points out, however, that when the imposition rests upon a misapplication or misunderstanding of the applicable law that we review that legal basis *de novo. Ryan v. Ford,* 16 S.W.3d 644, 648 (Mo. App.2000). Technically this is not a case involving a violation of the rules of discovery. And although *Pitts* does deal with Rule 4–4.2, the legal question in that matter was whether the statement taken from the employee was required to be produced under Rule 56.01 as a statement of a party. *Pitts* did not involve the issue of what sanctions, if any, should be imposed upon the party because of his counsel's violation of Rule 4–4.2 by taking a statement from a party deemed represented by the corporation's counsel. Nevertheless, we believe that the same standards of review are applicable in this different procedural posture. We review *de novo* the trial court's interpretation of Rule 4–4.2, and if we agree that there has been a violation of the

Rule, we will review the propriety of the sanction imposed upon an abuse of discretion standard.

### The Provisions of Rule 4–4.2

█ Rule 4–4.2 states:

In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

This provision is essentially identical to ABA Model Rule 4.2.[4] Organizations such as corporations, of course, can only communicate or be communicated with by and through their agents and employees. *See Globe Indem. Co. v. First Nat'l Bank in St. Louis,* 133 S.W.2d 1066, 1071 (Mo.App. 1939). Application of Rule 4–4.2 to organizational parties, therefore, requires some additional interpretation of the term "party." The Official Comment to the Rule provides guidance:

In the case of an organization, this Rule prohibits communications by a lawyer for one party concerning the matter in representation with person having managerial responsibility on behalf of the organization, and with any other person whose act or omission in connection with the matter may be imputed to the organization for purposes of civil or criminal liability or whose statements may constitute an admission on the part of the organization.

This comment has been said to be the "most concise and helpful statement in this regard." *Pitts,* 857 S.W.2d at 202. Again, the relevant sections of the comment to

---

4. The American Bar Association House of Delegates modified Model Rule 4.2 in August 1995, by changing the word "party" to "person" to make it clear that the Rule applies to a broader class than just parties to litigation. *Weider Sports Equip. Co. v. Fitness First, Inc.,* 912 F.Supp. 502, 506 (D.Utah 1996).

ABA Model Rule 4.2 are essentially identical to the official comment to Missouri Rule 4–4.2.[5]

## Analysis

In *Pitts*, the Supreme Court construed Rule 4–4.2 in the context of two individuals contacted *ex parte* by counsel while they were still employees of the organizational party. *Id.* at 201. The Court adopted the Comment to the Rule and its three category test for determining which employees will be considered a party and, therefore, not generally subject to contact by opposing counsel without consent of the organization's lawyer:

> This test focuses neither upon a bright line hierarchical structure nor a bright line temporal distinction regarding which employee shall be treated as a party, but instead sets out a functional approach designed to be sensitive to the practical considerations of the real world.

*Id.* at 202. The three categories of employees covered by Rule 4–4.2 are: (1) persons having managerial responsibility on behalf of the organization; (2) persons whose act or omission in connection with the matter may be imputed to the organization for purposes of civil or criminal liability; and (3) persons whose statement may constitute an admission on the part of the organization. As *Pitts* makes clear, the prohibition against contact with an organization's employees does not apply to *all* current employees but instead only to those employees who fall within one of the functional categories set forth above:

> [T]he goal [of Rule 4–4.2] is to allow the organization such treatment regarding these interests as will practically protect its legal interests, without allowing the organization the ability to stonewall its adversary's attempts to investigate the facts and/or deny the adversary the benefit of its work product.

*Pitts*, 857 S.W.2d at 202. The Rule is, therefore, not intended to thwart the search for truth but to balance a party's rights to investigate his claim only to the extent necessary to protect the organization's legal interests.[6]

Although *Pitts* considered only contact with current employees, KCS urges that the Supreme Court indicated an intent to apply Rule 4–4.2 to former as well as current employees citing the following statement: "Whether an employee, *past or present*, is considered within the perimeters of the term 'party' when the actual party litigant is an organization has been the source of confusion and considerable litigation."· *Id.* at 201 (italics added). In addition to the fact that the Court was only considering the situation of current employees, we view the quoted statement as doing no more than making a general observation about the nature and extent of the larger issue as it was being raised and litigated at the time both in Missouri and elsewhere. We do not interpret that passage as indicating an intent to extend the Court's analysis to former employees of an organizational party.

## Does Rule 4–4.2 Apply to Former Employees?

Looking to Formal Opinion 91–359 issued by the ABA's Committee on Ethics

---

5. As with the actual text of the Rule, the 1995 amendments to Model Rule 4.2 do not have a material impact upon those portions of the official comment relevant to the issues at bar.

6. We are also mindful that "any shift away from informal information gathering toward formal discovery increases costs and reduces judicial efficiency." *Polycast Tech. Corp. v. Uniroyal, Inc.*, 129 F.R.D. 621, 628 (S.D.N.Y. 1990).

and Professional Responsibility for guidance, nearly all commentators upon Model Rule 4.2 agree that the Rule itself does not expressly address the issue of whether a former employee of an organization can fall under the Rule. *See, e.g.,* Susan J. Becker, *Conducting Informal Discovery of a Party's Former Employees: Legal and Ethical Concerns and Constraints,* 51 MD. L.REV. 239, 285 (1992); Michelle A. Kaminsky, Comment, *A Call for Clarity: Pennsylvania Should Uniformly Allow Ex Parte Contact With Former Employees Of A Represented Party Under PRPC 4.2,* 73 TEMPLE L.REV. 1095, 1098 (2000). Formal Opinion 91–359 indicates that Model Rule 4.2 was applicable only to individuals who were *currently* employed by the organizational party. While the Formal Opinion mentioned that some jurisdictions had extended the application of Model Rule 4.2 to former employees, the committee took the position that such interpretations had no support either explicitly or implicitly in the text of the rule or the official comment. The Committee even conceded that there are substantial public policy concerns that would support such an extension.[7] Nevertheless, that approach was rejected by the Committee as unsupported by the text of the Rule and Official Comment. In the view of the Committee, had the drafters of the Model Rule intended to extend the Rule's prohibition to former employees, they could have expressly done so within either the Rule or the Official Comment. Upon that basis, the Formal Opinion concludes that an attorney may engage in *ex parte* contact with a former employee of an organization without fearing that his action might violate Model Rule 4.2.

The majority of states that have addressed this question have followed the approach of Formal Opinion 91–359 and taken the position that Rule 4.2 does not apply with regard to former organizational employees. *See generally,* Benjamin J. Vernia, Annotation, *Right of Attorney to Conduct Ex Parte Interviews with Former Corporate Employees,* 57 A.L.R. 5th 633 (1998). There is also momentum to amend the Official Comment to Model Rule 4.2, making explicit the exclusion of former employees from the protection afforded by the rule. AMERICAN BAR ASSOCIATION, COMMITTEE ON EVALUATION OF THE RULES OF PROFESSIONAL CONDUCT, REPORT WITH RECOMMENDATION TO THE HOUSE OF DELEGATES (August 2001) (available at http://www.abanet.org/cpr/e2k-rule42.html) ("Consent of the organization's lawyer is not required for communication with a former constituent [of the organization].")

### The Missouri Informal Advisory Opinion

The Missouri Chief Disciplinary Counsel in Advisory Opinion Number 970214 indicated that *ex parte* contact with former organizational employees may be barred by Rule 4–4.2. The advisory opinion states in part:

> If the employee is one whose acts can be imputed to the employer or who can make admissions which will be binding on the employer, Attorney may not make contact with that employee without going through the employer's attorney or another attorney who represents the employee in that matter. Attorney also may not directly contact current or former management employees who had

7. "While the Committee recognizes that persuasive policy arguments can be and have been made for extending the ambit of Model Rule 4.2 to cover some former corporate employers, the fact remains that the text of the Rule does not do so and the comment gives no basis for concluding that such coverage was intended." ABA Comm. on Ethics and Professional Responsibility, Formal Op. 359 (1991)

management duties related, in any way, to the situation involved in the matter. The trial court specifically relied upon this advisory opinion and found that, while employed by KCS, House "held a management level position and was Plaintiff's immediate supervisor for a period of time." KCS, on appeal, also relies upon the advisory opinion and *Pitts* as discussed above.

In arguing that *Pitts* and the advisory opinion support the trial court's ruling, counsel for KCS, with commendable candor, acknowledges that he cannot conceive of a scenario by which a former employee (at the time of *ex parte* contact) may make an admission binding upon the organization. Likewise, KCS acknowledges that no acts or omissions of House form the basis for Smith's liability claim against the railroad. Therefore, the only possible basis for exclusion of House's testimony under Rule 4–4.2 would be House's "managerial status."

We agree with the overwhelming majority of other states that Rule 4–4.2 and its respective counterparts simply does not apply to former employees who are not expressly represented by their own counsel or counsel for the organization. *See generally,* Vernia, *supra.* KCS does advance valid arguments for some restriction on the ability to contact former managerial employees. For example, managerial employees may have had access to confidential organizational information or privileged communications between the organization and its attorneys. Both ABA Formal Opinion 91–359 and the proposed revisions to Model Rule 4.2 suggest that an attempt to obtain such information from a former organizational employee may violate Model Rules other than Rule 4.2 (such as Rule 4.4, which concerns the rights of third parties). To the extent that other Rules or laws are in place that protect the organization's interest in preventing disclosure of privileged or otherwise confidential information, there may be no need to resort to Model Rule 4.2. In any event, that issue is not before us, as KCS makes no claim that House was privy to such information.

KCS claims that Smith's counsel violated other rules because KCS' counsel had spoken to House and Smith's counsel asked about those conversations. KCS misunderstands the principle cited above which is directed at *ex parte* contracts with former employees who before ending their employment have become privy to confidential material or who in a special situation remain involved in the management of litigation after the end of employment and thereby acquire privileged information. Because in our analysis House was not part of the organization for attorney-client privilege purposes any privileged information he received after he left the organizations' employment would be unprotected or the privilege considered waived. In any event, that issue is not before us, as KCS makes no claim that House was privy to such information.

Informal Advisory opinions are not binding. Rule 5.30(b). And in this instance Opinion Number 970214 is not persuasive as a valid interpretation of the ABA Model Rule or Missouri's Rule 4–4.2. Nor do we agree that the *Pitts* decision, with its great reliance placed upon the Official Comments to the Model Rule, would compel or permit the conclusion sought by KCS. There is, again, nothing in the Rule or Comment suggesting, by the words chosen, any intent to cover former employees. There is substantial merit in reasonably consistent rules regulating professional conduct throughout the states. This is true particularly when lawyers, organizations and their employees (current and former) may operate or be located in various states. No persuasive argument is

made that Missouri should stand virtually alone in applying Rule 4–4.2 to former employees.

Even assuming that *Pitts* indicates some intent to apply Rule 4–4.2 to former employees, the only basis for KCS' argument and the trial court's ruling was that House was a "managerial employee" under the Rule. KCS argues that this court's decision in *State ex rel. Atchison, Topeka & Santa Fe R.R. v. O'Malley*, 888 S.W.2d 760 (Mo. App.1994), supports the trial court's order excluding any testimony from House. That case involved an order from the circuit court permitting contact with any railroad employee upon the theory that 45 U.S.C. § 60 (applicable only to FELA cases) superseded Rule 4–4.2 in such type of cases. This court entered an order of prohibition barring the completely unfettered *ex parte* contact with railroad employees. It is true as KCS argues that we referred to *Pitts* and its language concerning "managerial employees." We did not, however, offer any definition of that term. In fact we specifically contemplated that the trial court might subsequently make further orders allowing *ex parte* contact but guided by the provisions of Rule 4–4.2 rather than § 60 of the federal law. *Id.* at 762 n. 2. *O'Malley*, therefore, provides no guidance on the issue at hand.

Smith argues that Rule 4–4.2 does not apply to low level managers such as House. The Rule itself does not define the term "managerial employee." Although KCS argues that the prohibition should apply in effect to any and all managers of any type, that contention is neither supported by the underlying purposes of the Rule, by most commentators, or by the overwhelming weight of decisions from other jurisdictions. Charles Wolfram has described the purposes of the Model Rule:

> The objective of the anticontact rule is to prevent improvident settlements and similarly major capitulations of legal position on the part of a momentarily uncounseled, but represented, party and to enable the corporation's lawyer to maintain an effective lawyer-client relationship with members of management. Thus, in the case of corporate and similar entities, the anticontact rule should prohibit contact with those officials, but only those, who have the legal authority to bind the corporation in the matter or who are responsible for implementing the advice of the corporation's lawyer or any other member of the organization whose own interests are directly at stake in a representation.

CHARLES W. WOLFRAM, MODERN LEGAL ETHICS § 11.6.2, at 613 (1986). Various courts have similarly defined the purpose but also have found an intent to protect the corporation against intrusions into the confidential relationship between lawyer and client. *See, e.g., Curley v. Cumberland Farms, Inc.*, 134 F.R.D. 77 (D.N.J.1991) (applying New Jersey law) (rule designed to protect privileged information of the corporation within a manager's knowledge). Other courts have held that protection of the attorney-client privilege is not one of the purposes of Model Rule 4.2 itself but is covered by other provisions of the ethics code. *See, e.g., P T Barnum's Nightclub v. Duhamell*, 766 N.E.2d 729, 737 (Ind.Ct. App.2002) (noting that Rule 4.4 prohibits counsel from attempting to obtain privileged information from a former employee). Regardless of which view is applied, there is no evidence or suggestion that House was in possession of (or asked by Smith's counsel about) any privileged information.

Courts in various jurisdictions have developed a number of tests to determine whether an organizational employee is a "manager" within the meaning of the various states' equivalent of Rule 4–4.2. The

two most widely utilized are the "managerial-speaking agent test" (see *Wright by Wright v. Group Health Hospital*, 103 Wash.2d 192, 691 P.2d 564 (1984)) and the "control-group test" (see *Fair Automotive Repair, Inc. v. Car–X Service Systems, Inc.*, 128 Ill.App.3d 763, 84 Ill.Dec. 25, 471 N.E.2d 554 (1984)). Other cases discussing these tests can be found at 57 A.L.R.5th 633. The common thread of the majority of these cases is the view that managers are not protected by the anti-contact rule merely because they have some supervisory responsibility in the organization. In particular, low level supervisors are not protected simply because they are managers unless their acts are imputable to the organization or they can make admissions that are binding on the organization. This approach is quite consistent with the Court's explanation in *Pitts* that it did not wish to employ a strictly hierarchical test.

There is no indication in the record that House's position would satisfy any of these tests. He was not Smith's supervisor at the time of the accident nor was he responsible for the maintenance of the equipment that Smith contended to be unsafe. Nor did House have management control over any litigation, let alone the litigation at hand. Nor did he consult with the organization's attorney while in its employ-

ment about litigation matters or have any responsibility for creating company policy.

Finally, this limited approach to who constitutes a manager under Rule 4–4.2 is consistent with the draft proposed revisions by the ABA to Model Rule 4.2. Acknowledging criticism of the phrase in the current comment to Rule 4.2 of "persons having a managerial responsibility on behalf of the organization" as vague and overly broad, the proposed new comment to Rule 4.2 states, in part: "[t]his Rule prohibits communications with a constituent of an organization who supervises, directs or regularly consults with the organization's lawyer concerning the matter or has authority to obligate the organization with respect to the matter...." A restrictive view of the term "managerial responsibility" is consistent, as well, with the twin objectives of the ethics rule to protect the rights of a represented litigant from unfair dealing and, at the same time, not to unduly restrict informal fact investigation. Such a view also discourages improper use of the ethics rules by an organization in an attempt to hide or conceal information.

▮▮▮ Therefore, we hold that even if Rule 4–4.2 could be construed to apply to former managerial employees, witness House would not fit within that classification. Because we find that the *ex parte* contact did not violate Rule 4–4.2, the trial could not properly strike his testimony under that provision.[8]

---

8. Even if a violation of Rule 4–4.2 was committed, it is unclear what, if any, sanctions may be sought against a party. There is no express authority within the Supreme Court Rules themselves that grants trial courts the discretion to impose litigation sanctions for most violations of the Rules of Professional Conduct. This, of course, is not true for other sections of the Rules. For example, trial courts are vested with discretion in granting sanctions against parties and their attorneys for violations of the rules of discovery. *Ballesteros v. Johnson*, 812 S.W.2d 217, 224 (Mo. App.1991). In the discovery context, a re-

viewing court may only overturn such sanctions upon a finding that the trial court abused its discretion. *State ex rel. Mo. Hwy. & Transp. Comm'n v. Pully*, 737 S.W.2d 241, 245–46 (Mo.App.1987). Even though the case at bar does not concern a discovery sanction, instead concerning a possible violation of the Rules of Professional Responsibility, KCS argues that a similar standard of review should be applied to the sanctions employed by the trial court here.

There should be some initial hesitation before countenancing the entry of sanctions against a party for its attorney's violation of a

## Could the Trial Court Properly Exclude the Testimony on Another Basis?

■ Even though we find that the trial court could not properly exclude the testimony of House as a sanction for a violation of Rule 4–4.2, we must, nevertheless, affirm if that exclusion is proper on some other evidentiary ground. *Mo. Farmers Ass'n v. Kempker,* 726 S.W.2d 723, 726 (Mo. banc 1987). During the offer of proof, House's testimony was taken on two topics. First, House was asked to testify regarding a statement contained within the deposition testimony of Scott (Smith's roadmaster at the time of the accident), who stated that House had told him that Smith had experienced continuing back problems from his prior injury. Second, House testified regarding KCS' lack of maintenance regarding the offloading doors on ballast cars. KCS contends on the first topic that House's proffered testimony is equivocal, ambiguous, and does not clearly rebut Scott's testimony. With regard to the second topic, KCS claims that there was no testimony in the offer of proof on the maintenance issue, thereby waiving that issue on appeal. Even if the

issue was properly preserved, KCS argues that the evidence was cumulative.

KCS' argument has at least some merit on the issue of House's testimony. Much of House's testimony is equivocal, and House did not recall with any certainty whether he had told Scott about Smith's prior back injury. Nevertheless, House gave unequivocal testimony that Smith's subsequent work was not impaired by the earlier injury. Specifically, this exchange took place during the questioning of House during the offer of proof:

Q: Your statement says, Mr. House, that Rickey [Smith] worked as hard if not harder than anyone on your territory from 1993 to June of 1998, is that true?

A: That's true.

Q: To your knowledge, did you or anybody working under you carry Mr. Smith or in any way try to cover for him during those years from '93 to '98?

A: No.

Q: As the result of any back problem?

A: No.

Rule of Professional Conduct. As the Eastern District opined in *Terre Du Lac Prop. Owners' Ass'n v. Shrum,* 661 S.W.2d 45, 48 (Mo.App. 1983), "[t]he purpose of the Canons of Ethics is to regulate the conduct of counsel, not a weapon to be used against the attorney's client." While the quoted language of the *Terre Du Lac* opinion is *dicta,* it has been favorably cited as recently as 1999. *See State ex rel. Wallace v. Munton,* 989 S.W.2d 641, 645 (Mo.App.1999). This caution is reinforced by language within the "Scope" section of Rule 4 that discusses how the objectives of the Ethical Canons "can be subverted when they are invoked by opposing parties as procedural weapons." Rule 4. That section further explains that the violation of a disciplinary rule "does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the Rule." *Id.*

Courts in other jurisdictions have held that violations of Model Rule 4.2 are not grounds for sanctions against a party. For example, in *Plan Committee in the Driggs Reorganization Case v. Driggs,* 217 B.R. 67, 72, (D.Md. 1998), the court stated that "the appropriate remedy for any ethical violation [of Rule 4.2] that occurred would be disciplinary action against [the attorney], not dismissal of the adversary proceeding, suppression of evidence, or disqualification of counsel." *Id. Driggs* was cited with approval by the U.S. District Court for the Western District of Missouri in *Calloway v. DST Systems,* 98-1303-CV-W-6, 2000 WL 230244, at *3, 2000 U.S. Dist LEXIS 2635 at *11 (W.D.Mo., Feb. 28, 2000) (discussing Missouri Rule 4–4.2). While not binding on this court, *Driggs* is nevertheless persuasive precedent on the issue and its counsel is well taken.

Given that House knew Smith for many years, and was his supervisor for much of that time, his testimony was highly probative on the issue of whether Smith had prior back problems that impeded his work for KCS. Even if House could not directly rebut Scott's testimony regarding the alleged hearsay statement, House's testimony would still be relevant for rebuttal on the issue of whether Smith truly suffered from serious back problems prior to the accident.

█ With regard to the ballast car maintenance testimony, KCS places great emphasis on the fact that this testimony was elicited by the trial judge and not Smith's counsel. KCS appears to take the position that this fact excludes House's response from the offer of proof. If so, then the issue would not be properly preserved for appeal. KCS presents no authority in support of their position.

Their position is not consistent with the rationales underlying offers of proof. This court recently stated:

> The courts have established two purposes for the offer of proof: (1) preserve the record for appeal so the appellate court understands the scope and effect of the questions and proposed answers in considering whether the trial court's ruling was proper; (2) it allows the trial court, once again, to consider the admissibility of the evidence after it is presented.

*Roy v. Mo. Pac. R.R. Co.*, 43 S.W.3d 351, 368 (Mo.App.2001). Neither of those rationales would limit the contents of the offer of proof to the responses of a witness made only in response to questioning by the party making the offer. Instead, all of the matters within the offer of proof, whether they be questioning by the party,

that party's opponent, or the court, should be considered within the gamut of the offer of proof. Even though the trial court, without prompting by the parties, raised the discussion of the condition of ballast cars, it still took place during Smith's offer of proof. As such, House's testimony on the issue was before that court for its consideration in ruling upon the motion to exclude his testimony. Similarly, that proffered testimony is within the record for our consideration as well. The issue, therefore, has been preserved for appellate review.

█ KCS argues that House's testimony regarding the condition of the ballast cars cumulative. It points out that three current non-management employees of KCS testified both about complaints about the operation and maintenance of the ballast doors and Smith's pre-existing back condition. KCS refers us to the general rule that the exclusion of evidence that is merely additional evidence of the same kind bearing upon the same point will not be considered prejudicial error upon appeal. *Sampson v. Missouri Pacific Railroad Co.*, 560 S.W.2d 573, 590 (Mo. banc1978). Smith's reliance upon *Smith v. Wal–Mart Stores, Inc.*, 967 S.W.2d 198, 207 (Mo.App.1998) and similar cases is not responsive because those deal with a complaint on appeal that the trial court erred in *admitting* alleged cumulative evidence rather than excluding it.[9] In other words the authority cited by Smith does not address the issue of prejudice from the exclusion of cumulative evidence as argued by KCS. Nevertheless Smith is correct that evidence is not cumulative merely because it is of the same kind and character. The three non-managerial employees all testified that after the 1991 injury Smith was

---

**9.** "Evidence should not be rejected as cumulative when it goes to the very root of the matter in controversy or relates to the main issue, the decision of which turns on the weight of the evidence introduced by the respective parties." *Kummer v. Cruz,* 752 S.W.2d 801, 808 (Mo.App.1988).

able to return to work fully with no complaints or limitations. This was in direct contradiction of the statement attributed to House (Smith's pre-jury supervisor) by KCS' witness T.L. Scott (Smith's supervisor at the time of the accident). House's testimony in this regard was not therefore merely cumulative of the three co-workers of Smith but was different in character because it came from a former KCS supervisor and in character because it contradicted the testimony of witness Scott. Because we do not find the testimony of House about Smith's physical condition to be cumulative and believe its exclusion was prejudicial it is not necessary to discuss whether the other testimony concerning the ballast cars was non-prejudicially cumulative.

### Conclusion

Rule 4–4.2 does not create a *per se* bar against *ex parte* contact with former managerial employees of an organizational party. Even assuming that the Rule applies to former employees, House was not a managerial employee who could not be contacted. Thus, we conclude that the trial court abused its discretion in excluding House's testimony. Given that House's testimony is relevant and admissible for at least one of the two proffered grounds, the trial court improperly excluded his testimony.

As the above issue is dispositive, we do not reach Smith's remaining points on appeal, as they are unlikely to recur upon retrial. The judgment below is therefore reversed and the cause remanded for a new trial.

HAROLD L. LOWENSTEIN, Presiding Judge, and THOMAS H. NEWTON, Judge, concur.