

# MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | |
|---|---|
| STEPHEN J. HALE, ET AL., | ) |
| | )   **WD76726** |
|      **Appellant-Respondents,** | )   **WD76765** |
|   **v.** | ) |
| | )   **OPINION FILED:** |
| COTTRELL, INC., ET AL., | ) |
| | )   **December 30, 2014** |
|      **Respondent-Appellants,** | ) |
| | ) |
| AUTO HANDLING CORPORATION | ) |
| AND PACIFIC MOTOR TRUCKING | ) |
| COMPANY, | ) |
| | ) |
|      **Respondents.** | ) |

**Appeal from the Circuit Court of Jackson County, Missouri
Honorable James Dale Youngs, Judge**

Before Division One: Thomas H. Newton, P.J.,
Lisa White Hardwick, and Anthony Rex Gabbert, JJ.

Mr. Stephen and Ms. Cynthia Hale filed a petition for damages against Cottrell, Inc.,

Pacific Motor Trucking Company (PMT), Auto Handling Corporation (AHC) (collectively, "the

Defendants"), and others.[1] Cottrell filed a motion to dismiss the petition, which the other

defendants joined. The trial court invoked its inherent powers and dismissed the case with

prejudice on the ground that the Hales, aided by their attorneys, committed fraud on the trial

---

[1] The petition was filed against other companies and individual employees of Auto Handling Corporation, a subsidiary of Jack Cooper Transport, the company that employed Mr. Hale at the time of the incident. The individuals were dismissed from the case and replaced by AHC.

court. Cottrell requested attorney fees, which the trial court denied. The Hales appeal, and Cottrell cross-appeals. We affirm.

**Factual and Procedural Background**

In August 1996, Mr. Hale sustained an injury to the lower back in an on-the-job accident at Continental Waste Management (CWI). A larger truck driven by a Lochirco Fruit and Produce Company (Lochirco) driver hit Mr. Hale and a coworker, while they were driving in one of CWI's trucks. Mr. Hale went to St. John's Mercy Hospital for x-rays. Thereafter, he went to Washington Memorial for rehabilitation; he was recommended to Dr. David Chalk for follow-up care.

In 1997, Mr. Hale filed for workers' compensation benefits. In July 1997, Dr. R. Peter Mirkin evaluated Mr. Hale on behalf of CWI. Dr. Mirkin opined in a report that Mr. Hale suffered a "*very mild* [back] strain" from the 1996 accident, but that it had "completely resolved" such that Mr. Hale could "work without restrictions." He concluded that Mr. Hale would experience episodic back pain solely attributed to a preexisting condition ("congenital anomaly . . . on the right" but no spondylolisthesis[2] and "preexisting degenerative spine problems") and that Mr. Hale was not permanently disabled from the injury. In November 1997, Dr. Charles McGinty, Sr., examined Mr. Hale on behalf of Mr. Hale's counsel. Contrary to Dr. Mirkin, Dr. McGinty issued a detailed opinion that Mr. Hale suffered a *severe* spraining injury to the preexisting spine condition (partial spondylolisthesis, a congenital deformity, in the lower back and "its subsequent asymptomatic development of arthritic changes"), and that the injury aggravated or exacerbated this condition. Dr. McGinty observed that Mr. Hale walked with a minimal limp on the right side. He concluded that Mr. Hale had a permanent partial disability of

---

[2] "Spondylolisthesis is a condition involving the forward displacement of one vertebra over another." *Criswell v. Short*, 70 S.W.3d 592, 593 (Mo. App. S.D. 2002). "Spondylosis is a general term for degeneration of the spine." *Id.*

thirty-five percent at the lower back, ten percent of which was due to the preexisting condition, and the remaining twenty-five percent to the spraining injury. In 1998, the parties disagreed as to the "nature, extent of [permanent partial disability], medical causation, . . . [and] past [and] future medical [expenses]," and settled the case. They agreed that Mr. Hale had only a ten-percent disability of the lower back. Mr. Hale remained under the care of Dr. Chalk.

In 2001, Mr. Hale filed a civil suit seeking compensation for the injuries and damages caused by the 1996 accident. Mr. Hale amended the petition in 2003 to seek damages from Lochirco for its driver's negligence and CWI's insurer for contract liability to Mr. Hale as the beneficiary of the underinsured policy. The petition alleged that the injuries Mr. Hale sustained in 1996 were permanent and progressive in nature. The petition further alleged that Mr. Hale "ha[d]. . . suffered great pain, . . . discomfort, inconvenience, and disruption of the enjoyment of life as a proximate result of [Lochirco]'s negligence," and that "[Mr. Hale] ha[d] [thus]. . . incurr[ed] medical expense in excess of $25,000[,] and w[ould] in the future incur further medical expense and require medical treatment." In April 2004, the case was dismissed without prejudice. In October 2004, Mr. Hale obtained the legal file from his counsel for the CWI and the Lochirco cases. The previous litigation file contained all of the medical records.

In September 2005, Mr. Hale was allegedly injured on the job while "performing his normal work duties as a car hauler for [Jack Cooper Transport]" by operating a rig (trailer) manufactured by Cottrell. A few weeks later, Mr. Hale was evaluated by Dr. David Kennedy, who noted in a medical report that Mr. Hale stated that he had no prior injury to the lumbar spine (lower back).[3] Dr. Kennedy noted disc herniation and recommended surgery if the prescribed

---

[3] The record shows that, in 2005, Mr. Hale reported to a different doctor that he hurt his neck and back after an accident in 1995, but that the pain resolved within a few weeks.

3

epidural steroid injections did not alleviate the pain. He opined that the 2005 incident caused Mr. Hale's symptoms and need for treatment. At some point, Mr. Hale had back surgeries.

In 2006, Mr. Hale obtained new counsel, Mr. Jonathan Isbell, for a workers' compensation claim against Jack Cooper Transport. Sometime between 2006 and 2009, Mr. Hale delivered the previous litigation file to Mr. Isbell. In 2007,[4] the Hales obtained other counsel, Mr. Brian Wendler and Mr. Charles Armbruster, III, to sue the Defendants and others for damages. Mr. Isbell and Mr. Wendler shared office space, and they also shared Mr. Hale's medical records for the 2005 incident.

In September 2007, the Hales filed a multi-count petition, seeking compensatory damages from the Defendants under several theories, including products liability. The petition was amended in 2008 to include counts for punitive damages. In the amended petition, the Hales claimed that Mr. Hale injured his lower back and related areas during normal operation of a Cottrell rig while working. The Hales alleged that the loading skids on the Cottrell rig were defective and required replacement. They also alleged that the replacement skids from Canaramp USA, LLC, Fixco, Inc., or C.F. Bender, Inc., were defective. They further alleged that AHC improperly maintained the Cottrell rig by using the replacement skids that were ill suited to it, and that PMT tested those replacement skids on the Cottrell rig and approved the modification, knowing that those skids were dangerous. They further claimed that the Defendants' wrongful conduct resulted in injuries to Mr. Hale that deprived Ms. Hale of spousal support and services.

Discovery occurred among the parties, and it was sometimes contentious. In 2007, Cottrell sought medical records for the lower back before and after the 2005 incident by posing

---

[4] The Hales originally sued Cottrell and another company in Kansas courts. They dismissed the suit and later filed suit in Missouri against the same and additional defendants.

4

two questions in its interrogatories to the Hales. The Hales originally objected to the requests as "overbroad in time" and scope, but stated that "all available medical records and bills for plaintiffs ha[d] been produced." The Hales responded in a similar manner to other defendants, including a statement to Fixco that the 1996 injury was not the same as the 2005 injury.

In February 2009, the Hales later supplemented their responses with records from Dr. Chalk, who began treating Mr. Hale in 1996 for the lower back injury. They did not produce other medical records (Dr. Mirkin's and Dr. McGinty's reports and the St. John's x-ray results) concerning the 1996 injury. Mr. Hale was deposed in August 2008. In November 2008, Mr. Hale's deposition continued, during which he was confronted with his responses to prior interrogatories from the previous litigation concerning which doctors saw him. Mr. Hale acknowledged his responses. None of the attorneys questioned him about any visits with Drs. Mirkin or McGinty, two of the doctors mentioned in the response. Subsequently, the Defendants sought records from those doctors, and both offices reported that any records they had for Mr. Hale were gone due to the passage of time. Thereafter, Dr. Mirkin's report was produced by the Hales.

The jury trial was set for March 23, 2010.[5] At trial, the Hales' counsel stated in the opening statement that the jury would see the medical records from doctors of the prior lawsuit. A few witnesses were presented, and Mr. Hale was called to testify. Mr. Hale experienced an unrelated medical emergency. Thereafter, a mistrial was declared; retrial was initially set for March 7, 2011.

---

[5]Bender, Fixco, and Canaramp settled out of court with the Hales a few days before trial, and they were dismissed from the case with prejudice.

5

Subsequently, on February 8, 2011, Cottrell filed a motion to dismiss the case, pursuant to Rule 61.01(a), (d),[6] as a sanction against the Hales for violating Rule 56.01(b)(1). PMT and AHC joined in the motion. Prior to filing this motion, the trial court was informed that Dr. Mirkin's report was part of a Workers' Compensation Division record received by the Hales and that more than twenty pages of it were not produced. Thus, the trial court ordered Mr. Wendler to produce those pages, despite his representation that nothing of importance was contained in the remaining record. In the produced pages, Cottrell discovered Dr. McGinty's report that summarized and discussed in detail the St. John's records. The Defendants claimed that the Hales violated the discovery rule by failing to produce responsive documents before the 2010 trial.

On February 22, 2011, the Defendants filed a motion to dismiss, but this time they argued that the Hales were judicially estopped from taking a contrary position than their previous one.[7] The Defendants argued that Mr. Hale was "playing fast and loose" with the trial court, which undermined the integrity of the judicial process. The Defendants requested a dismissal, or that Mr. Hale "be estopped from denying that his low[er] back was not permanently disabled (or resolved) from the 1996 injury." Mr. Hale was deposed again; he admitted to seeing Drs. McGinty and Mirkin, but claimed that he did not see the reports until a few weeks before that deposition. He was not allowed to answer any other questions about Dr. McGinty's report.

In March 2011, after a pretrial conference, the trial was continued. Subsequently, depositions were taken of several individuals, Mr. Hale's former counsel (for the dismissed

---

[6] Rule references are to Missouri Court Rules 2010.

[7] In the 2001 lawsuit, Mr. Hale filed responses, under oath, to Lochirco's interrogatories, claiming that Dr. Mirkin and Dr. McGinty had treated or examined him for the workers' compensation claim, and that he missed several periods of work. Additionally, he claimed that he was still experiencing pain in his lower back in his responses to the insurance company's interrogatories in 2003.

lawsuit) and Mr. Isbell (for the 2005 incident). The depositions revealed that Mr. Hale had obtained the previous litigation file from counsel in 2004 and gave it to Mr. Isbell sometime between 2006 and 2009. Mr. Hale gave fifteen pages of the legal file to Mr. Isbell in 2009, which included Dr. Mirkin's report and some of the St. John's records. Former counsel had responded to Mr. Wendler's request for the file, in mid-November 2008, by providing him a copy of the release that Mr. Hale signed when he had obtained the file. Mr. Wendler did not supplement discovery. After a trial court order, Mr. Isbell produced the missing St. John's records from the previous litigation file at the deposition in October 2011.

On May 29, 2012, Cottrell filed supplemental arguments in support of its motion to dismiss for the Hales' violation of the discovery rule. Cottrell argued that the results of the depositions revealed that the Hales "concealed" Dr. McGinty's report and engaged in a broad pattern of misconduct regarding other evidence. On June 5, 2012, Cottrell filed a motion to dismiss for the same reasons stated in its supplemental arguments, requesting that the trial court dismiss the case, pursuant to its inherent powers, because the Hales and their attorneys committed a fraud on the trial court.

In a lengthy, detailed judgment, the trial court found that the Hales committed fraud upon it. Invoking its inherent authority to sanction, it dismissed the Hales' case. It denied the other grounds for dismissal as moot. It also denied Cottrell's request for attorney fees. Both parties appeal.

**Standard of Review**

We review a trial court's decision to invoke its inherent powers to sanction for an abuse of discretion. *Rea v. Moore*, 74 S.W.3d 795, 799 (Mo. App. S.D. 2002). The trial court abuses its discretion when its ruling "is clearly against the logic of the circumstances and is so arbitrary

7

and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Id.* "[I]f reasonable persons can differ about the propriety of the action taken by the trial court, then it cannot be said that [it] abused its discretion." *Anglim v. Mo. Pac. R. Co.*, 832 S.W.2d 298, 303 (Mo. banc 1992) (internal quotation marks omitted). We view the evidence in the light most favorable to the trial court's ruling. *See id.*

## Legal Analysis

The Hales raise five points, and Cottrell raises one point. The Hales challenge the dismissal as a sanction, pursuant to the trial court's inherent powers, because: (1) there is no clear and convincing evidence that the Hales committed fraud on the trial court; (2) there is no clear and convincing evidence that the Hales "acted in bad faith and had an actual intent to mislead or deceive another"; (3) the prerequisites for sanctions for discovery violation were not shown in the record; (4) the alleged failure to disclose information did not prejudice the Defendants; and (5) the use of the trial court's inherent powers was not reasonably necessary to preserve the trial court's existence or protect its administration. Cottrell challenges the denial of attorney fees because the record shows that the Hales caused it to incur additional expenses.

A trial court may use its inherent powers and impose sanctions when parties act in bad faith. *A.J.H. ex rel. M.J.H. v. M.A.H.S.*, 364 S.W.3d 680, 682 (Mo. App. E.D. 2012). Trial courts are encouraged to use them "sparingly, wisely, temperately, and with judicial self-restraint." *Id.* (internal quotation marks and citation omitted). "[S]anctions imposed under the court's inherent powers should be limited to situations in which it is reasonably necessary to preserve the court's existence and protect it in the orderly administration of its business." *Rea*, 74 S.W.3d at 800 (internal quotation marks and citation omitted). A trial court abuses this discretion when its sanction serves to destroy a plaintiff's case and no evidence on the record exists to support a

8

finding of bad faith. *See Foster v. Kohm*, 661 S.W.2d 628, 632 (Mo. App. E.D. 1983). Bad faith "embraces actual intent to mislead or deceive another," or "imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud." *A.J.H.*, 364 S.W.3d at 683. Thus, conduct that constitutes "bad judgment or negligence" does not constitute actions performed in bad faith. *See id.* (reversing the trial court's monetary sanction because the record did not support a finding of bad faith); *see also McPherson v. U.S. Physicians Mut. Risk Retention Grp.*, 99 S.W.3d 462, 481 (Mo. App. W.D. 2003) (reversing the trial court's attorney fee award as a sanction because the evidence was insufficient to support a finding of bad faith).

### The trial court properly invoked its inherent powers.

In the third and fifth points,[8] the Hales argue that the trial court erred in dismissing the case because the facts do not support the invocation of the inherent powers. Specifically, they claim that dismissal was improper because certain prerequisites to impose sanctions for a rule violation were not met. The Southern District addressed a similar argument in *Rea*. 74 S.W.3d at 799-800. The *Rea* court determined that the satisfaction of the prerequisite under the pleading rule was not necessary because the basis for the sanction was the trial court's inherent powers, and not the violation of the rule. *Id.* We adopt that reasoning and apply it here. Because the trial court expressly declined to address the alleged rule violation and granted the motion to dismiss upon its inherent powers, the absence of those prerequisites had no bearing on the invocation of its inherent powers. The Hales' third point is denied.

They also claim that the dismissal was improper because such sanction was not reasonably necessary to preserve the trial court's existence and protect the orderly administration of justice. They rely on *Rea*. The *Rea* court stated that "the actions found by the trial court to

---

[8] We address the Hales' points out of order for ease of discussion.

9

have been committed by Appellant were not fully covered by Rule 55.03 [pleading rule], and thus justified the imposition of sanctions under the court's inherent powers." 74 S.W.3d at 801. The Hales claim that their conduct could have been adequately addressed under Rule 61.01, so the trial court erred in invoking its inherent powers to sanction them.

In their response to the motion to dismiss on the ground of discovery violation, the Hales argued that the motion should be denied because the Defendants did not follow the procedural rules to support a violation. They alleged that the Defendants failed to specifically request medical reports from doctors who merely "evaluated" Mr. Hale, and failed to seek rulings on the Hales' objections to the requests for certain medical records. The trial court expressly mentioned this argument and found it to have "surface appeal." Thus, sanctions under Rule 61.01 may not have addressed the conduct that the trial court was convinced constituted a fraud upon it.

The Missouri Supreme Court has held that the discoverability of medical records before trial helps the trial court reach "the ultimate object of every trial, which is to get at the truth," and that failing to disclose medical records to the defendants does not serve the interests of justice. *State ex rel. McNutt v. Keet*, 432 S.W.2d 597, 602 (Mo. banc 1968). "Discovery is a vital aspect of the truth-seeking mechanism of the adjudicative process." *In re Carey*, 89 S.W.3d 477, 497 (Mo. banc 2002). "[M]isrepresentation to the court is an affront to the fundamental and indispensable principle that a lawyer must proceed with absolute candor towards the tribunal." *Id.* at 498 (internal quotation marks and citation omitted). "In the absence of that candor, the legal system cannot properly function." *Id.* (internal quotation marks and citation omitted).

The fact that all medical records had been disclosed prior to the new trial date does not expunge Mr. Hale's and counsel's misrepresentations to the trial court. Nor does it erase the prejudice suffered by the Defendants in preparing for the first trial and in preparing for any

10

retrial with the new information. In light of the significance of the medical records to the truth-seeking process, we cannot say that the trial court abused its discretion when it invoked its inherent power to dismiss the case to protect the integrity of the judicial process. The Hales' fifth point is denied.

### *The findings are supported by the evidence.*

In the first point, the Hales argue that the trial court erred in dismissing the case because there was no clear and convincing evidence that the Hales committed fraud upon it warranting a dismissal. Specifically, the Hales argue:

> the trial court [misapplied] the factors . . . in *Rea v. Moore*, 74 S.W.3d 795 (Mo. App. S.D. 2002) and *Auode v. Mobil Oil Corp.*, 892 F.2d 115 (1st Cir. 1989) in finding a "fraud on the court"; there was no evidence of "false pleadings, false affidavits, or perjured testimony"; there was an actionable case or controversy; there was not clear and convincing evidence that [Mr.] Hale knowingly gave false testimony regarding a material fact; and allegations regarding purported misconduct by independent third parties are irrelevant [as] to whether plaintiffs committed "a fraud on the court."

In the second point, the Hales argue that the trial court erred in dismissing the case as a sanction because there was not clear and convincing evidence that the Hales acted in bad faith or with the specific intent to deceive the trial court. Specifically, they argue:

> [Mr.] Hale identified his 1996 injuries, the primary providers who treated him for those injuries, and the previous litigation in the first deposition in August of 2008; defendants knew the identities of everyone who treated or examined [Mr.] Hale for the 1996 injuries as of September 29, 2008; the trial court's findings of bad faith are not supported by the record; the trial court's findings of bad faith pertain to conduct that was never deemed sanctionable prior to the dismissal; and any misconduct, if any, at wors[t] amounted to bad judgment or negligence.

The trial court's judgment contains significant findings and an in-depth explanation of its ruling. In short, the trial court stated that "Mr. Hale, aided in large measure by his current attorneys, has willfully and in bad faith engaged in a course of conduct intended to conceal from defendants key evidence regarding the nature and extent of the injuries he sustained in his 1996

11

accident." It found that Mr. Hale accomplished that concealment during his depositions when he testified falsely about the nature and extent of the injury from the 1996 accident and his knowledge of what happened to his legal file from the previous lawsuits. It concluded that this conduct "w[as] calculated to, and ha[s], interfered with the judicial system's ability to effectively facilitate the adjudication of this action and ha[s] unfairly hampered defendants' ability to present their defenses to plaintiffs' claims."

> The trial court quoted language in *Rea* that defined "fraud on the court" to occur:

> when "it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense."

74 S.W.3d at 800 (quoting *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989)). It then concluded that Mr. Hale's conduct constituted fraud on the court.

The Hales argue that the trial court misapplied the factors in *Rea* because, unlike the evidence in this case, that case involved uncontroverted evidence of "false pleadings, false affidavits[,] or perjured testimony" and lacked "an actionable case or controversy." Contrary to the Hales' contention, *Rea* did not apply a factor test in affirming the trial court's dismissal.

In *Rea*, the trial court dismissed the case, pursuant to its inherent powers to protect the integrity of the judicial process, because it found that the plaintiff had committed fraud on the court by filing false allegations and affidavits and committing perjury. *Id.* at 798. On appeal, the plaintiff challenged the invocation of the trial court's inherent power to sanction for filing a frivolous lawsuit, the finding of which was not made by the trial court. *Id.* at 799. The *Rea* court thus did not analyze whether the record supported a finding of fraud on the court. *Id.* It merely stated that substantial evidence supported the findings of false pleadings, false affidavits, and

12

perjured testimony by clear, cogent, and convincing evidence. *Id.* at 801. It concluded that the trial court acted appropriately by dismissing the petition because such misconduct threatened the judicial process. *Id.* Accordingly, the Hales' reliance on *Rea* to support this contention is erroneous.

Fraud comes in many forms. Fraud on the court can be either intrinsic or extrinsic. *See State ex rel. Missouri-Nebraska Exp., Inc. v. Jackson*, 876 S.W.2d 730, 734 (Mo. App. W.D. 1994) (citing *Winchell v. Gaskill*, 190 S.W.2d 266, 271-72 (Mo. banc 1945)) (describing intrinsic fraud as perjury and extrinsic fraud as conduct by party in procuring the judgment). Fraud on the court may occur when a party knowingly makes a representation to another that is false and material for the person to rely upon it, and the person, not knowing that the representation is false, justly relies on it to the person's injury. *See Hewlett v. Hewlett*, 845 S.W.2d 717, 719 (Mo. App. W.D. 1993) (holding evidence supporting a finding of intrinsic fraud justified vacating the judgment under Rule 74.06(b)). "Fraud may be established by circumstantial evidence; an actual 'representation' may be inferred from the circumstances surrounding the transaction; [and] a claim may arise from the intentional creation of a false impression[.]" *Constance v. B.B.C. Dev. Co.*, 25 S.W.3d 571, 588 (Mo. App. W.D. 2000). A fraud case generally fails "when the facts and circumstances presented are as consistent with honesty and good faith as they are with fraud. The truth or falsity of the representation is determined as of the time it was made and as of the time it was intended to be relied and acted upon." *Blanke v. Hendrickson*, 944 S.W.2d 943, 944 (Mo. App. E.D. 1997) (internal citation omitted).

We conclude that concealing certain medical records as part of a scheme to preclude the defense from challenging the nature and extent of claimed injuries constitutes fraud on the court, and, at the very least, demonstrates bad faith conduct. *See State ex rel. Jackson Cnty.*

*Prosecuting Attorney v. Prokes*, 363 S.W.3d 71, 82 (Mo. App. W.D. 2011) (stating that failure to disclose certain documents constituted bad faith conduct). Thus, to the extent that the Hales are arguing that the trial court's findings, if supported by the record, do not constitute a fraud on the court or bad faith conduct, we reject it. We now address whether the record supports the trial court's findings.

The Hales claim that no clear and convincing[9] evidence exists that Mr. Hale knowingly gave false testimony as to a material fact because the evidence was controverted as to whether Mr. Hale committed perjury, unlike in *Rea* and in other precedent finding fraud on the court. We reject the Hales' contention that a clear, convincing, and cogent burden of proof cannot be met when the evidence is controverted. In fact, "[t]he clear and convincing evidence standard refers to evidence that instantly tilts the scales in the affirmative when weighed against *the evidence in opposition*, and the fact finder's mind is left with an abiding conviction that the evidence is true." *Sparks v. Sparks*, 417 S.W.3d 269, 294 (Mo. App. W.D. 2013) (internal quotation marks and citation omitted) (emphasis added).

The Hales also claim that no clear and convincing evidence exists that Mr. Hale knowingly gave false testimony as to a material fact because the statements he provided were truthful and not false. Alternatively, they argue that, even if the statements were false, they were not material.

---

[9] The Hales claim that the proper standard of review is not an abuse of discretion, but *de novo* because whether there was fraud upon the court is a legal question. The Hales rely on *Smith v. Kansas City S. Ry. Co.*, 87 S.W.3d 266, 271 (Mo. App. W.D. 2002). *Smith* held that the application of a certain rule of professional conduct was a question of law to be reviewed *de novo*, and that imposition of the sanction for violating the rule was to be reviewed for an abuse of discretion. *Id.* at 271. Those facts differ from these at issue here because the trial court's decision does not rest upon a party violating a rule, as was the case in *Smith*, but instead upon its inherent powers to protect the integrity of the judicial process. Thus, we review the trial court's decision for an abuse of discretion. In doing so, we determine whether the record supports a finding that the Hales committed fraud on the court.

14

The trial court found that Mr. Hale testified falsely about "the doctors he saw after his 1996 injury," and concealed the fact that Drs. McGinty and Mirkin had evaluated him, "until his 2011 deposition." The trial court also found that Mr. Hale provided false testimony about "the severity of the injuries he received in the 1996 accident," which included "what his medical providers told him about those injuries," and "the circumstances surrounding the onset and cause of his right leg limp." Moreover, the trial court found that Mr. Hale testified falsely about not having medical records from his 1996 injury, not knowing of their whereabouts, or not knowing "'what happened' to the [previous litigation] file and the medical and other records contained in it."

The Hales argue that these findings do not show that Mr. Hale willfully and deliberately testified falsely. In doing so, the Hales do not dispute the existence of other evidence exposing Mr. Hale's statements to be false. Rather, the Hales attempt to explain away any deceitful intent for the falsity by suggesting there are legitimate inferences to be drawn from Mr. Hale's statements. For example, the Hales cite forgetfulness as the reason for Mr. Hale's assertions that he saw no other doctors besides Dr. Chalk for the 1996 injury and that he did not know what happened to the previous litigation file. "[Q]uestions of intent often present witness credibility issues[ ] that lie within the peculiar province of the [finder of fact]." *Brown v. Bennett*, 136 S.W.3d 552, 556 (Mo. App. W.D. 2004) (internal quotation marks and citation omitted). The standard of review does not allow us to consider contrary inferences in determining whether substantial evidence exists to support the finding. *See Lunceford v. Houghtlin*, 326 S.W.3d 53, 64 (Mo. App. W.D. 2010); *see also Talley v. Swift Transp. Co.*, 320 S.W.3d 752, 754 (Mo. App. W.D. 2010).

15

Notwithstanding, Mr. Hale did not provide an affidavit explaining his behavior; there was no evidence that he forgot—just the proffering of the possibility. However, the significant role that the reports of Drs. McGinty and Mirkin played in the prior litigation shows any purported forgetfulness of Mr. Hale to be unreasonable, thereby supporting the trial court's conviction of a willful concealment. Additionally, Mr. Hale informed Dr. Kennedy, the treating physician for the 2005 incident, that he had no prior injury to the lower back. In light of the facts that Mr. Hale accepted a workers' compensation settlement for sustaining the 1996 injury to the lower back and one year before the deposition had dismissed a case about that injury, his failure to inform Dr. Kennedy about the previous injury and the subsequent pain supports a finding that Mr. Hale attempted to conceal the nature and extent of that injury. The Hales' attempt to now mitigate that false statement by focusing on an intake sheet from that doctor's office, which describes Mr. Hale as having recovered from a sprained back. However, this intake sheet was produced after the trial court dismissed the case, so we do not consider it.

As for the statement about the previous litigation file, the most telling findings are that Mr. Hale obtained the previous litigation file in 2004, gave it to Mr. Isbell sometime between 2006 and 2009, and claimed that he did not have any of the previous litigation file in 2008. Yet, according to Mr. Isbell, Mr. Hale produced some of the medical records from that file in 2009; he failed to give his consent for Mr. Isbell in 2011 to release the medical records, even after it was discovered that Mr. Isbell had the previous litigation file. These findings show that Mr. Hale's failure to mention Dr. McGinty's evaluation and the involvement of other doctors was purposeful in an attempt to conceal the nature and extent of the 1996 injury. Counsels' complicity in the willful concealment is supported by the following facts: (1) Mr. Wendler found out in November 2008 that Mr. Hale had obtained the previous litigation file; (2) Mr. Wendler shared an office

16

with Mr. Isbell, the attorney who received the file from Mr. Hale; (3) Mr. Wendler failed to offer an affidavit explaining that he questioned Mr. Hale about the whereabouts of that file or medical records from it; and (4) Mr. Wendler attempted[10] to obtain the records from a different source.

As for the Hales' contention that the trial court erred in considering Mr. Isbell's statements in finding fraud on the court, the law permits such consideration. "[O]ther transactions of a party having a tendency to explain the motives present, if not too remote and conjectural, may properly be admitted." *Kansas City v. Keene Corp.*, 855 S.W.2d 360, 372 (Mo. banc 1993); *see also Hewlett*, 845 S.W.2d at 720-21 (considering testimony from others to conclude that the circumstances substantiated a finding that a party intentionally provided false testimony about the value of certain assets). Thus, Mr. Isbell's statements about his actions concerning the previous litigation file were properly considered to determine whether the concealment was purposeful.

Substantial evidence exists to support the trial court's conclusion: the Defendants established by clear, cogent, and convincing evidence that Mr. Hale provided false testimony in the depositions about the doctors that he saw concerning his 1996 injury, the severity of his injuries, what he was told about those injuries, and his knowledge and possession of the missing medical records, all in an effort to conceal the nature and extent of the 1996 injury. We now address the materiality of these statements.

The Hales claim that the false statements are not material because they have no bearing on the Defendants' liability. False testimony is material when it is essential to the resolution of

---

[10] The Hales' counsel claimed that it sought Dr. Mirkin's report when Cottrell listed Dr. Mirkin as an expert. Counsel attempted to obtain the medical records, including any reports by Dr. Mirkin, from Lochirco's counsel, who testified at a deposition that the firm could not locate the legal file. In November 2009, Mr. Hale provided authorization for the Defendants to obtain the St. John's records after he was ordered to do so by the trial court. The custodian claimed that the records had been destroyed.

17

the case.  *March v. Midwest St. Louis, L.L.C.*  417 S.W.3d 248, 258 (Mo. banc 2014) (finding false statements about an expert's credentials "w[ere] material to the outcome of the case because the credibility of his expert opinion alone was crucial to proving the essential inquiry in the case").  The nature and extent of an injury is material to the resolution of any personal injury case, specifically in preexisting injury cases.  "[A] plaintiff may recover for aggravation of an existing disease if [it is] caused by the negligence [the] defendant, [but the] plaintiff has the burden of showing a causal connection between the negligence, injury[,] and damages sought." *Rech v. AAA Plumbing Co.*, 798 S.W.2d 194, 196 (Mo. App. E.D. 1990).

Here, Mr. Hale maintained that he was permanently disabled because of failed back surgery, which was necessitated as a result of an injury sustained on the job while properly operating a Cottrell rig that had been maintained by PMT and AHC.  Specifically, Mr. Hale seemingly claimed that his operation of the rig caused a herniated disc, or resulted in his already asymptomatic herniated disc becoming symptomatic; this ultimately resulted in three surgeries to repair the lumbar spine, which rendered him unable to work.  The evidence of the willful concealment related to the causation issue because it showed that Mr. Hale had partial spondylolisthesis that could have progressed to cause the herniated disc.  Thus, Mr. Hale's false testimony designed to conceal that evidence was material.  The Hales' first and second points are denied.  We now address the issue of prejudice.

### *Prejudice is established.*

In the fourth point, the Hales argue that the trial court erred in dismissing the case because the Defendants were not prejudiced by the failure to disclose information concerning the 1996 lower back injury.  The Hales claim that there was no prejudice because: Mr. Hale's deposition included testimony about the 1996 injuries and previous litigation; the Defendants had

18

documents from the previous litigation with the names of the medical providers and examiners prior to trial; all materials were produced before the new trial date; third parties had the records; the Defendants failed to move for the appropriate relief after discovering the fraud; AHC is insured by a defendant in the dismissed case; and the Defendants did not provide sworn testimony that they did not have Dr. McGinty's report and the St. John's record before 2011.

The Hales are correct that the law requires a showing that prejudice resulted from the Defendants' misconduct to warrant a dismissal. *See Gallagher v. DaimlerChrysler Corp.*, 238 S.W.3d 157, 166 (Mo. App. E.D. 2007) (upholding the denial of a motion for new trial for late production of records, in violation of discovery rules, because the trial court found no outcome-determinative prejudice); *see also McCullough v. Commerce Bank*, 349 S.W.3d 389, 396 (Mo. App. W.D. 2011) (upholding the denial of a motion for new trial for inadvertent failure to produce discovery documents because there was neither a showing of fraud nor prejudice). "The purposes of discovery are to eliminate concealment and surprise, to aid litigants in determining facts prior to trial, [and] to provide litigants with access to proper information with which to develop their respective contentions and to present their respective sides on issues framed by the pleadings." *Fairbanks v. Weitzman*, 13 S.W.3d 313, 327 (Mo. App. E.D. 2000) (internal quotation marks and citation omitted). "An equally important purpose is to narrow the issues and thereby facilitate a speedy and less expensive disposition of the case." *Wilkerson v. Prelutsky*, 943 S.W.2d 643, 649 (Mo. banc 1997). Discovery "is not intended to be a battleground where victory is awarded to the most clever and combative adversary." *State ex rel. Castillo v. Clark*, 881 S.W.2d 627, 630 (Mo. banc 1994).

The trial court found that the Hales' conduct unfairly hampered the defense. As we previously determined, the record supports that finding. At various times during discovery, the

defendants offered their medical experts for deposition. Upon cross-examination of Dr. Anthony Eidelman, Cottrell's first medical expert, Mr. Wendler compelled Dr. Eidelman to admit that the medical records related to that 1996 injury would be important to determine a relationship between the 1996 injury and the 2005 injury. Before the Hales produced Dr. Chalk's records, the Defendants unsuccessfully requested the medical records from St. John's. The hospital would not release them without an authorization from Mr. Hale. The Defendants attempted to obtain Mr. Hale's authorization. Counsel for the defendants emailed Mr. Wendler requesting the authorization or the actual St. John's records.

Meanwhile, Cottrell's second medical expert, Dr. Ted Bain, was deposed, and upon cross-examination by Mr. Armbruster, admitted that Dr. Chalk's records did not contain information about the condition of Mr. Hale's lumbar spine before the 2005 incident. Thereafter, in December 2009, at another defendant's request, Mr. Hale presented himself, pursuant to a trial court order, for a medical examination conducted by Dr. John Pazell. The Hales produced Dr. Mirkin's report, after obtaining the record from the Division of Workers' Compensation; they failed to produce the other documents in the record, including Dr. McGinty's report. During a post-trial deposition, Dr. Pazell stated that the 1996 x-rays were needed to "show the presence or absence of spondylosis, or slippage, or instability[,] which was the major reason [that Mr. Hale's] fusion was done."

In arguing that no prejudice existed because the 1996 injury was disclosed and the presence of Dr. McGinty was known before trial, the Hales show a misunderstanding of the trial court's finding. In discovery, the Defendants attempted to obtain the medical records to support their theory that the 2005 incident did not necessitate Mr. Hale's surgeries. The Defendants knew prior to the mistrial that Mr. Hale had previously injured his lower back in a work-related

20

accident in 1996. The Defendants also knew that, in 2004, the Hales dismissed a lawsuit, filed in 2001, against the employer of the driver that caused the accident, seeking compensatory damages for the injury because Mr. Hale was still experiencing back pain. The Defendants knew from an interrogatory of the previous litigation that the parties entered a settlement agreement in 1998, based on a dispute regarding the extent and nature of the injury. The Defendants also knew from Dr. Mirkin's report that Dr. Mirkin evaluated Mr. Hale in 1997, found the injury not to be serious, and noted no abnormality in the spine apart from a preexisting condition. Dr. Mirkin's report was produced; the report consisted of two pages that contained vague references to the St. John's x-ray results.

However, in January 2011, after the mistrial, Dr. McGinty's report was provided to the Defendants as a result of Mr. Hale's actions and statements during discovery. Dr. McGinty's report opined in detail that Mr. Hale had a preexisting degenerative condition and that condition, combined with his lower back injury, resulted in a permanent partial disability to his body. Additionally, Dr. McGinty died in October 2010, so the Defendants could not have had the opportunity to confront him with his report in preparation for a new trial. This report supported Dr. Bain's opinion that Mr. Hale's surgeries and pain were the result of his preexisting condition.

Accordingly, the prejudice to the Defendants was that the Defendants' experts were deprived of the opportunity to use the original records from the 1996 injury and the competing report of Dr. McGinty to challenge the Hales' expert evidence concerning the extent and nature of the previous injury and the causation of the 2005 injury—seeing how the progression of the preexisting condition over a nine-year period between the 1996 accident and the 2005 incident could have been the source of the herniated disc and pain that necessitated the surgeries.

As for the Hales remaining allegations, they explain why the Hales should not be sanctioned for the late production of medical records rather than how the Defendants were not prejudiced by it. The trial court is in a better position to assess prejudice, and we defer to its findings. *See Gallagher*, 238 S.W.3d at 166. The Hales' fourth point is denied.

*Cottrell's cross-appeal is denied.*

In its sole point, Cottrell argues that the trial court abused its discretion in denying an award of attorney fees because Mr. Hale's bad faith conduct and fraud on the court prejudiced Cottrell and thereby caused Cottrell to incur substantial attorney fees. Cottrell relies on *Rea* for support. However, *Rea* did not include an attorney fee award. 74 S.W.3d at 798. Instead, in addition to dismissing the plaintiff's claims with prejudice, the trial court ordered the plaintiff to pay $5,000 to the court registry. *See id.*

Cottrell fails to provide this court with law that justifies the award of attorney fees to a party simply because the opposing party's bad faith conduct, as found by the trial court, caused that party to incur substantial attorney fees. In fact, "Missouri, with few exceptions, follows the majority American rule that litigants pay their own attorney[] fees." *McPherson*, 99 S.W.3d at 481. "A [trial] court has the inherent power to sanction bad faith conduct, probably by way of awarding attorney[] fees, on analogy to the power to award attorney[] fees related to prosecuting a contemnor." *Id.* (internal citations omitted) "But it may do so only when the sanctioned party acted in bad faith." *Id.* The trial court's decision to award attorney fees is reviewed for an abuse of discretion. *In re Marriage of Lindeman*, 140 S.W.3d 266, 279 (Mo. App. S.D. 2004).

The trial court denied attorney fees because it had dismissed the Hales' claims. By dismissing the case, Cottrell was saved from accruing additional attorney fees to litigate the case. In these circumstances, this court cannot find an abuse of discretion in denying attorney fees.

22

*See White v. City of Ladue*, 422 S.W.3d 439, 453 (Mo. App. E.D. 2013) (*"*On appeal, our task is to determine whether the trial court could have reasonably concluded as it did, and not to determine whether we would have imposed the same sanctions under those circumstances."); *see also Hurlock v. Park Lane Med. Ctr., Inc.*, 709 S.W.2d 872, 879 (Mo. App. W.D. 1985). Cottrell's sole point is denied.

### Conclusion

For the above reasons, we affirm.

/s/ THOMAS H. NEWTON
Thomas H. Newton, Presiding Judge

Hardwick and Gabbert, JJ. concur.

23