

# In the Missouri Court of Appeals
# Eastern District

## DIVISION THREE

| | | |
|---|---|---|
| KATARINA HOOCK, | ) | No. ED108473 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| v. | ) | |
| | ) | Honorable Clinton R. Wright |
| SLB ACQUISITION, LLC D/B/A | ) | |
| SCOTTRADE CENTER, | ) | |
| | ) | |
| Appellant. | ) | FILED: March 23, 2021 |

### Introduction

SLB Acquisition, LLC ("SLB") appeals from the trial court's judgment following a jury trial on Katarina Hoock's ("Hoock") personal injury action. SLB raises two points on appeal. Point One argues the trial court lacked authority under Rule 61.01[1] to enter an order of default against SLB for discovery violations because the order improperly expanded the sanction from a prior order that merely struck their pleadings. Point Two contends the trial court abused its discretion in denying SLB's continuance motion due to Hoock's late production of medical records. Because the trial court was free to modify its interlocutory order striking SLB's pleadings, the trial court did not err in entering its order of default against SLB, and we deny Point One. Because the record of medical history disclosures and prior litigation in the case provided SLB ample opportunity to avoid unfair surprise or prejudice arising from trying the

---

[1] All Rule references are to Mo. R. Civ. P. (2019).

case on the date of trial, the trial court did not abuse its discretion in denying SLB's second motion for a continuance the day before trial, and we deny Point Two. Accordingly, we affirm the judgment of the trial court.

<u>Factual and Procedural History</u>

This appeal arises out of a personal injury action filed against SLB by Hoock following her injury at a St. Louis Blues hockey game at the Scottrade Center on January 18, 2016. At that game, an unruly patron fell on Hoock from a higher seating row. Hoock was taken by ambulance to the hospital, where doctors performed a CT scan and determined she had suffered a closed head injury and cervical strain. Hoock took time off work for recovery and followed up with her primary care physicians. When Hoock complained of memory issues, nausea, and vertigo, she was diagnosed with post-concussive syndrome and was directed to a neurologist. Hoock's medical records indicated short-term memory dysfunction, dizziness, headaches, depression, and fatigue. Hoock filed a personal injury action against the patron and SLB in November, 2016.

As the case was litigated, both parties alleged violations of the rules of discovery against the other. Following Hoock's second motion to compel and to award sanctions, the trial court found a history of delay and obfuscation on the part of SLB and issued an order (the "Sanction Order") finding that SLB's discovery violations constituted contumacious and deliberate disregard of the trial court's authority. The Sanction Order struck SLB's pleadings and affirmative defenses. The Sanction Order also ordered SLB to present its corporate representative for deposition, ordered SLB to produce certain documents and respond to certain interrogatories, and awarded Hoock $5,000 in attorneys' fees. SLB later moved for leave to file its answer and affirmative defenses following its compliance with the Sanction Order. Hoock

opposed the motion, arguing that the sanctions were proper, SLB had not fully complied with the Sanction Order, and Hoock would suffer prejudice if the sanction were vacated. After a change of judge, the trial court heard SLB's motion and argument at two subsequent hearings, and took the sanction matter under submission.

The trial court issued its order (the "Default Order") denying SLB's motion for leave to file an answer and affirmative defenses, and entered a judgment of default against SLB as to liability on Hoock's claim. The trial court explained that SLB was "effectively asking the Court to reconsider its sanctions against it" and denied SLB leave to refile its pleadings. In the Default Order, the trial court found:

> Based on the briefs, the arguments of counsel and the Court's review of the file, the Court finds that there is no justification for setting aside or vacating the sanction entered against [SLB] or disturbing the Court's earlier finding that [SLB] exhibited a "contumacious and deliberate disregard of this Court's authority" due to a number of discovery abuses, and that [Hoock] has suffered substantial prejudice as a result thereof. Accordingly, [SLB]'s Motion for Leave to File Answer and Affirmative Defenses is hereby denied.

> Further, based on the arguments presented in the briefs and at the hearing, the Court finds it would be beneficial to clarify its earlier Sanction Order. In the Sanction Order, by striking [SLB's] entire answer and its affirmative defenses, the Court's intention was to foreclose all argument regarding and [sic] need for Plaintiff to prove [SLB]'s liability at trial, leaving the extent of [Hoock]'s damages as the only issue for trial with respect to [Hoock]'s claims against [SLB]. While the Court believes that its earlier Sanction Order was sufficient to accomplish this goal, in order to avoid any confusion at trial, the Court hereby enters an interlocutory judgment of default against [SLB] as to liability on [Hoock]'s claims against [SLB].

Trial was set for June 3, 2019. SLB moved for a continuance, which the trial court granted. SLB acknowledged in its subsequent motion for sanctions and to compel that its first motion for a continuance had been granted so that SLB could depose Dr. Susan Davis ("Dr. Davis"). Hoock was treated by Dr. Davis in December 2017 and again in 2019 at the same

3

facility as Hoock's other primary-care practitioners but had not been disclosed prior to SLB's expert's review of the case.

The day before trial, which had been reset for August 26, 2019, SLB filed a second motion for sanctions and trial continuance (the "Continuance Motion"), alleging a continuance and other sanction-based remedies were needed due to Hoock's late production of relevant medical records. Prior to filing this motion, SLB had moved for sanctions and/or to compel production of various medical records for delayed disclosure, which SLB incorporated into its Continuance Motion by Rule 55.12. Following hearings, the trial court had denied SLB's motion for sanctions but ordered Hoock to execute additional authorizations to facilitate the production of various medical records, including records from Dr. Joel Koenig ("Dr. Koenig").

The parties presented written and oral arguments before the trial court on the Continuance Motion. The Continuance Motion claimed Hoock had engaged in a pattern of concealment about her medical condition before and after the incident. The Continuance Motion alleged Hoock produced new, relevant medical records less than two weeks before trial. Specifically, SLB alleged Hoock produced new records from 2006 to 2012 (the "2006-2012 Records"), including records involving Dr. Koenig's treatment of Hoock when she was in middle school between 2006 and 2007. These records evidenced treatment for depression, headaches, dizziness, difficulty concentrating, anxiety, and photophobia, all occurring prior to Hoock's disclosed 2012 concussions from sports injuries and a car accident.[2] SLB also claimed Hoock produced new records of a December 2017 visit with a late-disclosed medical provider (the "Davis Records"). Additionally, the Continuance Motion averred that after corrected authorizations were executed by Hoock earlier that month, SLB received records from other

---

[2] The parties dispute whether these records are properly before us. We find they are sufficiently incorporated by reference for purposes of evaluating the second continuance motion.

practitioners a few days before trial, including a record from Dr. Sonali Jain ("Dr. Jain"), an obstetrics and gynecology physician who had treated Hoock for postpartum depression in 2017.

The Continuance Motion maintained that a continuance was necessary because the newly produced records of head-related treatment were relevant to Hoock's claims for damages, and SLB's expert witness was unavailable to opine on the new records in time for trial because he was out of the country. In the attached affidavit, SLB's expert witness Dr. Todd B. Silverman ("Dr. Silverman") stated that he was on vacation and unavailable, that the Davis Records had not been provided when he offered his expert opinion on the case, and that Hoock had only attested to a history of headaches and not of migraines as mentioned in the new records. The Continuance Motion argued that the newly produced 2006-2012 Records and Davis Records were relevant to impeaching Hoock's position that, except for her disclosed 2012 concussions, she was asymptomatic prior to the hockey game incident. SLB claimed the new records showed Hoock had an unexplained increase in her antidepressant medication and was suffering from the same head injuries of which she then complained *prior* to the hockey game incident, including headaches, depression, and dizziness. The records also referenced a loss of consciousness in 2010 and a closed head injury in 2011. SLB argued it would suffer prejudice if the trial were not continued because Dr. Silverman was unavailable to review the original records of Hoock's earlier medical treatment and that such records were necessary to opine on the interaction between Hoock's preexisting conditions and her injury at the hockey game. SLB asserted that Dr. Silverman's testimony was relevant to the amount of damages Hoock was seeking.

In oral argument on the Continuance Motion before the trial court, Hoock countered that the records were not new. In particular, Hoock explained that the Davis Records had been part of the record for months and had been the reason the trial court granted SLB's first request for

continuance. Hoock asserted that SLB chose not to pursue deposing Dr. Davis prior to the rescheduled trial date. Regarding the 2006-2012 Records, Hoock argued that SLB had access to the records months earlier and had already deposed a witness who testified about Hoock's six-month depressive episode when she was in middle school in 2006-2007. Also concerning the 2006-2012 Records, Hoock maintained that the 2012 soccer injury and related concussions had been resolved, and the records and expert testimony showed she was symptom-free thereafter until the hockey game incident. Regarding the new mention of migraines in a 2011 record, Hoock contended that there was no diagnosis of migraines, but only a reference to "childhood migraines" in the patient-provided medical history. Hoock also noted that Dr. Jain had first prescribed Hoock the antidepressant medication in 2017 for postpartum depression and that as of 2019 Hoock's depression was being controlled through that medication.

SLB denied that the middle school medical issues were contained in the previously acquired medical records. However, the court acknowledged it could see in the record that the six-month depressive episode and treatment when Hoock was in middle school was part of the November 2018 report from Hoock's expert witness, Dr. Joseph Yazdi ("Dr. Yazdi").

Following oral argument, the trial court went off the record to further consider the arguments and evidentiary record. The trial court then denied the Continuance Motion. The trial court articulated its reasoning that Hoock had made available the matters from middle school through Dr. Yazdi's report and that both parties had previously made use of the medical conclusion that after 2012 Hoock was deemed nonsymptomatic. The trial court did not see a reason to delay the trial merely to investigate how or why the dosage increased for Hoock's depression medication. The trial court opined that Hoock adequately provided evidence about her three 2012 concussions for purposes of presenting her pre-existing medical history prior to

6

the hockey game injury in 2016. The trial court acknowledged some memory issues with respect to Hoock's medical history but determined from the record that the most significant prior history had been provided or made accessible through executed authorizations.

The case proceeded to trial on the issue of damages. After Hoock adduced evidence and rested her case, Hoock moved for a directed verdict on liability, which the trial court granted. Defendant then adduced evidence. Following deliberation solely on the issue of damages, the jury found in favor of Hoock and awarded her $1.2 million in damages.

SLB preserved its points on appeal in a motion for new trial, which the trial court denied. SLB then filed this appeal. Hoock stipulated as to the dismissal of SLB's co-defendant, the patron from the game, as the result of a settlement. During the pendency of the appeal, Hoock moved to dismiss SLB's brief for violations of Rule 84.04.

## Points on Appeal

SLB brings two points on appeal. Point One argues the trial court erred in entering the Default Order because it lacked authority under Rule 61.01 to further sanction SLB in that the prior Sanction Order only struck SLB's pleadings and a default on liability exceeded what was necessary to enforce compliance with the Sanction Order. Point Two asserts the trial court abused its discretion in denying SLB's motion for a continuance because SLB was denied sufficient time to review relevant late-produced medical records.

## Discussion

### I.      Point One—Default Order

In Point One, SLB contends the trial court lacked authority to enter a judgment of default against it on the issue of liability. Specifically, SLB maintains that the Sanction Order addressed SLB's discovery violations by striking its pleadings and affirmative defenses, and that the trial

7

court's further sanctioning by subsequently entering the default judgment exceeded the trial court's authority under Rule 61.01.[3]

A.      Standard of Review

We review a trial court's imposition of sanctions for discovery violations for whether the trial court abused its discretion. Lewellen v. Franklin, 441 S.W.3d 136, 149 (Mo. banc 2014) (internal citation omitted). However, in reviewing the actions and authority of the trial court, we defer to the trial court's factual determinations and review questions of law de novo. State ex rel. Kander v. Green, 462 S.W.3d 844, 847 (Mo. App. W.D. 2015) (internal citation omitted).

B.      Analysis

"The trial court is vested with broad discretion to control discovery and to choose a remedy to address any non-disclosure of evidence." Gallagher v. DaimlerChrysler Corp., 238 S.W.3d 157, 162 (Mo. App. E.D. 2007) (internal citation omitted). Rule 61.01 authorizes a trial court to enter an order of default as a sanction for discovery violations. Specifically, the trial court may "[e]nter an order striking pleadings or parts thereof or staying further proceedings until the order is obeyed or dismissing the action or proceeding or any part thereof or render a judgment by default against the disobedient party[.]" Rule 61.01(b), (d); Hooks v. MHS Hosp. Grp., LLC, 526 S.W.3d 136, 145 (Mo. App. W.D. 2017) (noting Rule 61.01 grants broad discretion over sanctions such that a trial court may even enter a default judgment without first striking the sanctioned party's pleadings). The word 'or' as used in Rule 61.01(b) and (d) is

---

[3] With regard to Hoock's motion to dismiss SLB's appellate brief for violations of Rule 84.04, we recognize that failure to satisfy Rule 84.04(c)'s demand for "a fair and concise statement of the facts relevant to the questions presented for determination without argument" is a sufficient basis on which we may dismiss an appeal. See Blanks v. Fluor Corp., 450 S.W.3d 308, 324 n.1 (Mo. App. E.D. 2014) ("An inadequate statement of facts is grounds for dismissal."). We are troubled by SLB's flagrant disregard for the requirements of Rule 84.04(c) and do not countenance the lack of respect for the rules of appellate procedure lightly. However, because Point One is limited to challenging the trial court's authority, which is a question of law, the glaring deficiencies in SLB's presentation of the facts do not fatally hinder the narrow scope of our review. For this reason alone we will exercise our discretion to review Point One. See id.

8

*inclusive,* meaning the trial court may award a combination of sanctions as it deems just, including simultaneously striking pleadings *and* issuing a default order. See, e.g., Stockmann v. Frank, 239 S.W.3d 650, 656 (Mo. App. E.D. 2007) (noting a trial court does not abuse discretion in both striking the pleadings and entering default judgment where the record reflects the offending party showed a contumacious, deliberate disregard for the circuit court's authority); Anderson v. Arrow Trucking Co., 181 S.W.3d 185, 188–89 (Mo. App. W.D. 2005) (same); see also Holm v. Wells Fargo Home Mortgage, Inc., 514 S.W.3d 590, 596–97 (Mo. banc 2017) ("The rule expressly contemplates that a trial court may, in its discretion, sanction a party for such misconduct by striking pleadings, limiting the party's ability to present evidence or otherwise participate at trial, entering a default judgment against the disobedient party, *and* requiring the disobedient party to pay the reasonable expenses incurred by the other party in pursuing discovery." (emphasis added)).

Although Missouri recognizes default as a harsh remedy, particularly where a judgment of default is issued on liability, a party maintains the right to have a jury determine the amount of damages. Holm, 514 S.W.3d at 601. Default is properly invoked where "(1) the disobedient party engaged in a pattern of repeated disregard of the obligation to comply with the rules of discovery, i.e., the party has demonstrated a contumacious and deliberate disregard for authority of the trial court; and (2) the opposing party was prejudiced thereby." Frontenac Bank v. GB Invs., LLC, 528 S.W.3d 381, 390 (Mo. App. E.D. 2017) (internal citations omitted); Stockmann, 239 S.W.3d at 656; Anderson, 181 S.W.3d at 188–89.

On appeal, the parties dispute whether the Default Order was a modification of the interlocutory Sanction Order or, alternatively, a separate, additional order requiring new and independent discovery violations to authorize its issuance under Rule 61.01. This distinction

touches the core of our analysis because the Supreme Court of Missouri reiterated as recently as 2019 that a trial court's interlocutory order "remains modifiable and, therefore, at any time *before final judgment* a court may open, amend, reverse, or vacate an interlocutory order." Meadowfresh Sols. USA, LLC v. Maple Grove Farms, LLC, 578 S.W.3d 758, 761 (Mo. banc 2019) (internal quotation omitted); Universal Credit Acceptance, Inc. v. Ware, 556 S.W.3d 69, 74–75 (Mo. App. E.D. 2018) (noting Rule 74.01(b) provides that an interlocutory order is subject to revision at any time before the entry of a final judgment (internal citations omitted)).

By comparing the different language used in the Default Order and the Sanction Order, SLB argues that the Default Order did not clarify the first order but instead imposed an additional sanction. Implicit in SLB's argument is its misguided assumption that modifications to the trial court's initial order may be only clerical in nature. Unlike a final judgment, which may be modified only via a nunc pro tunc order for clerical errors, an interlocutory order may be substantively amended, reversed, or vacated at any time before final judgment. See Sanford v. CenturyTel of Missouri, LLC, 490 S.W.3d 717, 719–20 (Mo. banc 2016).

SLB next reasons that if the Default Order was not a mere modification of an interlocutory order, then trial court lacked any basis for imposing additional discovery sanctions because SLB complied with the requirements of the Sanction Order and committed no further discovery violations. We reject SLB's characterization of the Default Order as being separate and distinct from the Sanction Order. The record before us demonstrates that, following Hoock's second motion for sanctions and to compel, the trial court entered its Sanction Order granting Hoock's motion and striking SLB's pleadings and affirmative defenses. SLB subsequently moved for leave to file its answer and affirmative defenses. Although SLB denies it sought reconsideration of the Sanction Order, the trial court noted SLB effectively asked the trial court

10

to reconsider the Sanction Order entered against it by seeking leave to file its pleadings after they were struck by the Sanction Order. Hoock opposed the motion, arguing that the Sanction Order was proper, that SLB had failed to fully comply with the Sanction Order, and that Hoock would suffer prejudice if the sanction were vacated. At two subsequent hearings, the trial court heard SLB's motion and argument, and took the sanction matter under submission. Hoock requested the trial court enter a default judgment on liability. When the case proceeded to its initial June trial date, the trial court issued its Default Order denying SLB's motion for leave to file its answer and affirmative defenses and ordering the entry of a default judgment on the issue of SLB's liability for Hoock's claim. The Default Order specifically found that "based on the arguments presented in the briefs and at the hearing, the Court finds it would be beneficial to clarify its earlier Sanction Order." The Default Order reasoned that "by striking [SLB]'s entire answer and its affirmative defenses, the Court's intention was to foreclose all argument regarding and [sic] need for Plaintiff to prove [SLB]'s liability at trial[.]"

Given the record before us, we hold that the trial court properly exercised its authority under Rule 74.01(b) to enter the Default Order as a clarifying modification of its earlier interlocutory Sanction Order. See Meadowfresh, 578 S.W.3d at 761; Universal Credit, 556 S.W.3d at 74–75. To the extent that a trial court's modification of an interlocutory order should be issued only with due notice to the affected parties, such that the parties have the opportunity to be heard, here, SLB expressly moved to refile its pleadings in response to the Sanction Order and argued its position before the trial court. SLB also had the opportunity to respond when Hoock sought a default on liability. See Simpkins v. Ryder Freight Sys., Inc., 855 S.W.2d 416, 421 (Mo. App. W.D. 1993). Additionally, SLB has not shown that a change in judge in the case between the two orders had any impact on the trial court's authority to modify the interlocutory

11

Sanction Order and issue the Default Order. See Universal Credit, 556 S.W.3d at 75 (noting that a successor judge has the authority to reconsider and reverse a predecessor judge's interlocutory rulings).[4]

Thus, because the trial court was free to modify its interlocutory Sanction Order striking SLB's answer and affirmative defenses, the trial court did not lack legal authority to enter its Default Order. See Meadowfresh, 578 S.W.3d at 761; Universal Credit, 556 S.W.3d at 74–75. Point One is denied.

## II. Point Two—Continuance Motion

Point Two posits the trial court abused its discretion in denying SLB's motion for a continuance based on Hoock's late production of key medical records shortly before trial.

### A. Hoock's Motion to Dismiss under Rule 84.04

We again note that Hoock has moved to dismiss SLB's appellate brief for failure to comply with Rule 84.04. In particular, Hoock complains that SLB's statement of the facts and use of facts in the argument sections of its brief fail to adhere to Rule 84.04(c)'s requirement that parties provide "a fair and concise statement of the facts relevant to the questions presented for determination without argument."

---

[4] To the extent SLB also alleges the trial court abused its discretion by imposing the ultimate sanction of default, such a claim would be multifarious under Point One for invoking two different standards of review. Points on appeal that raise multiple issues of law and standards of review violate Rule 84.04(d) by "group[ing] together multiple, independent claims rather than a single claim of error" and thus preserve nothing for review. Griffitts v. Old Republic Ins. Co., 550 S.W.3d 474, 478 n.6 (Mo. banc 2018) (internal quotation omitted). Nonetheless, we may choose to review the first point as an exercise of discretion. See id. at 478. Here, we note that SLB acknowledges that it does not challenge the trial court's authority to enter the Sanction Order. On appeal, although SLB disagrees with the severity of the Sanction Order, it limits this appellate challenge to the authority of the trial court to have entered the Default Order. SLB waived any challenge to the substance or severity of the Sanction Order, and SLB failed to preserve under Rule 84.04 any implied challenge as to whether the trial court's modification of the Sanction Order and entry of default on the issue of liability was an abuse of discretion. The trial court's authority to enter the Sanction Order is not disputed. The trial court's authority to order the entry of default derives from its modification and clarification of that order. See Hooks, 526 S.W.3d at 145.

"The primary purpose of the statement of facts is to afford an immediate, accurate, complete and unbiased understanding of the facts of the case." Nichols v. Div. of Emp't Sec., 399 S.W.3d 901, 903 (Mo. App. W.D. 2013) (internal quotation omitted). Appellants may "not simply recount appellants' version of the facts presented at trial." Blanks, 450 S.W.3d at 324 n.1. "Emphasizing facts favorable to the appellant and omitting others essential to the respondent does not substantially comply with Rule 84.04." Id. (internal citation omitted). Rule 84.04 is not merely designed to enforce hypertechnical procedures or to burden the parties on appeal; rather, "[c]ompliance with the briefing requirements is required, not only so the appellant may give notice of the precise matters at issue, but also so that unnecessary burdens are not imposed on the appellate court and to ensure that appellate courts do not become advocates for the appellant." Id. (internal citation omitted). A statement of facts that is argumentative does not substantially comply with Rule 84.04. Hamilton v. Archer, 545 S.W.3d 377, 379 (Mo. App. E.D. 2018). As Court of Appeals Judge A.P. Stone commented in the Missouri Bar Journal:

> [A]n inaccurate or biased statement, whether colored affirmatively by untruth or negatively by half-truth, is likely to hinder rather than advance the cause of the brief writer, and there is grave danger that the court may lose faith not only in that portion of the brief but also in the important portions following.

Judge A.P. Stone, Jr., Effective Appellate Briefs, 15 J. MO. BAR 80, 83 (1959). Relatedly, the unbiased and concise statement of facts must be supported with complete and accurate citation to the record, which is "mandatory and essential for the effective functioning of appellate courts because courts cannot spend time searching the record to determine if factual assertions in the brief are supported by the record." Duncan-Anderson v. Duncan, 321 S.W.3d 498, 499 (Mo. App. E.D. 2010) (per curiam) (quoting Johnson v. Buffalo Lodging Assocs., 300 S.W.3d 580, 581 (Mo. App. E.D. 2009)). Because failure to properly present the facts on appeal preserves

13

nothing for our review, "[a]n inadequate statement of facts is grounds for dismissal." Blanks, 450 S.W.3d at 324 n.1.

Here, Hoock maintains that SLB's argumentativeness and omission of facts favorable to the judgment warrant dismissal, given that the facts fail to preserve the arguments for appeal. See id. We agree that SLB's brief is deficient in its presentation of facts in numerous respects, including being argumentative, failing to consistently and accurately cite to the relevant pages in the transcript, and failing to summarize the trial court's findings and reasoning for denying the Continuance Motion. Because the written Continuance Motion was orally heard and decided, SLB's mere attachment of the legal file and its 900-page transcript would have burdened our review given that many of SLB's citations to the record were imprecise and failed to pinpoint the argument of the Continuance Motion before the trial court as well as the relevant portions of the trial court's decision. SLB devotes significant effort in its Statement of Facts in an apparent attempt to re-litigate the discovery battle between the parties, as well as rearguing the basis for its Continuance Motion. The Statement of Facts does not comport with Rule 84.04 nor does it well serve the merits of SLB's point on appeal. While these deficiencies are potentially fatal to SLB's appeal on this point, we prefer to address claims on their merits, if the presentation of the facts does not fatally hinder our review. See King v. King, 548 S.W.3d 440, 442 (Mo. App. E.D. 2018). Despite SLB's briefing deficiencies, we can glean SLB's basic arguments. Moreover, because and only because Hoock provided the precise and correct citations to the record, were we able to locate the relevant trial court findings in the record and provide meaningful review *without becoming an advocate for SLB*. We therefore choose to exercise our discretion and review this point on appeal. See id. Hoock's motion to dismiss SLB's appeal is denied.

B.      Standard of Review

A trial court is vested with broad discretion over discovery matters and remedies for alleged late disclosures of evidence. Gallagher, 238 S.W.3d at 162 (internal citation omitted). Further, "[o]verruling a motion for continuance is within the sound discretion of the trial court." Matter of A.L.R., 511 S.W.3d 408, 414 (Mo. banc 2017) (internal quotation omitted). Thus, we review the denial of a motion for continuance due to the late production of evidence for abuse of discretion. Rule 65.01; Macke v. Patton, 591 S.W.3d 865, 868 (Mo. banc 2019) (internal citation omitted). We will not find a trial court abused its discretion unless "the ruling is clearly against the logic of the circumstances and is so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful, deliberate consideration." Macke, 591 S.W.3d at 868 (quoting Howard v. City of Kan. City, 332 S.W.3d 772, 785–86 (Mo. banc 2011)). "We view the evidence in the light most favorable to the trial court's ruling." Hale v. Cottrell, Inc., 456 S.W.3d 481, 488 (Mo. App. W.D. 2014) (internal citation omitted). "[I]f reasonable persons can differ about the propriety of the action taken by the trial court, then it cannot be said that [the trial court] abused its discretion." Id. at 488 (quoting Anglim v. Mo. Pac. R.R. Co., 832 S.W.2d 298, 303 (Mo. banc 1992)).

"Denial of a request for a continuance is seldom reversible error." Newell Mach. Co., Inc. v. Pro Circuit, Inc., 596 S.W.3d 635, 643 (Mo. App. W.D. 2020) (quoting Tatum v. Tatum, 577 S.W.3d 146, 153 (Mo. App. E.D. 2019)). "Where we are analyzing a trial court's actions in the context of a response to pre-trial discovery, we consider whether, under the totality of the circumstances, the challenged act has resulted in prejudice or unfair surprise." Kehr v. Knapp, 136 S.W.3d 118, 122 (Mo. App. E.D. 2004) (per curiam) (quoting Siller v. Rivituso-Siller, 129 S.W.3d 433, 436 (Mo. App. E.D. 2004)). "The party requesting the continuance must make a

15

strong showing of abuse as well as prejudice resulting from the denial of the request." A.L.R., 511 S.W.3d at 414 (internal quotation omitted); Wintz v. Hyatt Hotels Corp., 687 S.W.2d 587, 590 (Mo. App. W.D. 1985).

C.    Analysis

Initially, we note that our review of Point Two is limited to the Continuance Motion as written and orally argued before the trial court. See Rule 65.03; see also Jacoby v. Hamptons Cmty. Assoc., Inc., 602 S.W.3d 869, 873 (Mo. App. E.D. 2020) (noting that we "will not convict a trial court of error for an issue not presented for its determination" (internal quotation omitted)). To the extent SLB's appellate brief asks us to conduct de novo review of the cross-party conflagration of discovery-violation allegations, such a task far exceeds the permissible scope of our review. See id. We recognize that the discovery issues are not limited to SLB; the record is replete with troubling discovery practices by both parties, an unfortunate and obstructive pattern that too often infects today's litigation practice. However, we must view the evidence in the light most favorable to the trial court's ruling and will affirm the judgment if it is correct for any reason. Important to our analysis, we will not overturn the trial court's ruling merely because we might have reached a different result had we sat in the trial court's place. See Hale, 456 S.W.3d at 488 (internal citation omitted).

SLB filed its Continuance Motion the day before trial, alleging that Hoock produced new medical records just two weeks before trial. Specifically, SLB alleged that the newly produced medical records included Hoock's 2006-2012 Records, which for the first time disclosed Hoock's treatment for depression, headaches, dizziness, difficulty concentrating, anxiety, and photophobia, all occurring prior to her disclosed 2012 concussions. The newly produced medical records also included the Davis Records, which evidenced recent depression treatment

from a late-disclosed medical provider. SLB maintained that a continuance was necessary because all head-related treatment was relevant to Hoock's claims for damages and, importantly, SLB's expert witness, Dr. Silverman, was unavailable to opine on the new records in time for trial. SLB's position at trial was that Hoock received neurological care only immediately after the incident and not consistently thereafter to support her claim for head-injury damages. SLB argued that Hoock was in remission for all symptoms allegedly associated with the hockey game incident.

A trial court has wide discretion to grant or deny a continuance due to alleged discovery violations, and "[t]he exercise of this discretion should be directed toward the accomplishment of fundamental fairness and the avoidance of unfair surprise." Kehr, 136 S.W.3d at 122 (quoting Siller, 129 S.W.3d at 436). "[D]iscoverability of medical records before trial helps the trial court reach the ultimate object of every trial, which is to get at the truth[.]" Hale, 456 S.W.3d at 489 (internal quotation omitted). Here, the trial court appears to have made a good-faith effort to ascertain the truth despite the contentious discovery process. See Lewellen, 441 S.W.3d at 149 (noting abuse of discretion only occurs where the trial court's ruling was "so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration" (internal quotation omitted)).

Hoock maintains that even if she was late in disclosing her medical records, SLB nonetheless fails to meet its burden of proving that the late disclosures adversely affected SLB's conduct at trial in trying the issue of the damages. See Gallagher, 238 S.W.3d at 166 (finding the trial court did not err in denying a motion for new trial following late production of records in violation of discovery rules where the trial court found no outcome-determinative prejudice despite recognizing troubling discovery handling by both parties). We ultimately are persuaded

that the trial court's denial of SLB's second request for a continuance was not clearly against the logic of the circumstance, but was firmly grounded not only on the record before it, but upon SLB's failure to demonstrate the necessary prejudice to warrant reversal. See A.L.R., 511 S.W.3d at 414; Lewellen, 441 S.W.3d at 149; Hale, 456 S.W.3d at 488.

We first address the Davis Records. Hoock first saw Dr. Davis, a member of Hoock's primary care practice group, in December 2017 during the pendency of the case. Dr. Davis indicated that Hoock's depression was being managed with medication. Critically, SLB acknowledged in its motion for sanctions and to compel that the trial court granted its first continuance to move the trial from early June to late August so that SLB could depose Dr. Davis. We cannot confirm Hoock's claims that SLB had access to the Davis Records many months in advance of trial, but do know for certain that SLB acquired the records at least by June based on SLB's own statements in its July motion to compel. In that motion, SLB acknowledged that the documents Hoock produced on June 3 contained medical records regarding Hoock's visit to Dr. Davis. Although the first continuance was granted for purposes of allowing SLB to investigate the Davis Records, the record lacks any indication that SLB attempted to depose Dr. Davis. This opportunity to pursue investigation into Dr. Davis's primary-care treatment contrasts with the facts in Wintz, in which the Western District found prejudicial error in the trial court's denial of a continuance where the defendants lacked any opportunity to have their medical expert examine a newly-disclosed x-ray exhibit that went directly to the nature and extent of the plaintiff's compensable injuries. Wintz, 687 S.W.2d at 591; see Newell, 596 S.W.3d at 644 (noting "a circuit court does not abuse its discretion in refusing to grant a continuance to allow for additional discovery when the party seeking the discovery had adequate means and ample time to conduct it without court intervention" (internal quotation omitted)). SLB's complaints regarding

18

the late disclosure of the Davis Records served as the basis of the trial court's granting of the first continuance and provided SLB sufficient time to adequately explore issues pertaining to Hoock's treatment referenced therein. Accordingly, we find SLB fails to make a strong showing of unfair surprise or prejudice. See A.L.R., 511 S.W.3d at 414.

We next consider SLB's complaint that Hoock untimely produced the 2006-2012 Records shortly before trial. The medical issues in these records included Hoock's six-month depressive episode in middle school, ten years before the hockey game incident, as well as Hoock's sports injuries and three previously-disclosed concussions in 2012. The parties dispute when SLB acquired access to the 2006-2012 Records and also dispute whether the 2006-2007 medical issues were mentioned in medical records disclosed prior to the 2006-2012 Records.

Our review of the record confirms the trial court's finding that Dr. Yazdi's November 2018 report specifically referenced Hoock's treatment for a bout of depression for several months in middle school. Therefore, SLB falls short of making the strong showing of unfair surprise and prejudice shortly before trial for us to conclude that the trial court abused its discretion in denying another continuance. See A.L.R., 511 S.W.3d at 414.

We also find the record supports the trial court's assessment that Hoock provided sufficiently timely disclosure about her 2012 concussions for purposes of offering relevant pre-existing medical history prior to the hockey game injury. See Hale, 456 S.W.3d at 489. Hale involved a worker's injury in a products liability action. In Hale, the Western District held that the plaintiff "conceal[ed] certain medical records as part of a scheme to preclude the defense from challenging the nature and extent of claimed injuries" which "constitute[d] fraud on the court, and, at the very least, demonstrate[d] bad faith conduct." Id. at 491. We concur with the trial court that Hale is distinguishable because, unlike here, the plaintiff's undisclosed records

19

went to causation. See id. at 494 (noting the plaintiff claimed that his operation of the rig caused a herniated disc or resulted in his already asymptomatic herniated disc becoming symptomatic, yet he willfully concealed a prior partial-spondylolisthesis diagnosis that could have caused the herniated disc). Contrastingly, while the trial court here acknowledged some memory issues with respect to the Hoock's recollection of her medical history going back to the eighth grade, the trial court found no willful concealment of medical records. We defer to the trial court's factual findings. Id. at 488. Moreover, as the trial court recognized, both parties relied on the medical experts' conclusions that Hoock's sports-related injuries and concussions in 2012 were fully resolved and that Hoock was asymptomatic prior to the incident. We are persuaded that a deeper dive into those records would not have had a significant impact on Hoock's claim for damages. See Wegeng v. Flowers, 753 S.W.2d 306, 308–09 (Mo. App. W.D. 1988) (noting a change in the plaintiff's claim that substantially enlarges the available damages may be a proper subject for a continuance). Similarly, in the context of the damages issue before the jury, neither the singular attestation to childhood migraines in Hoock's patient history nor the increase in known antidepressant medication rise to a level justifying a trial delay for more medical expert analysis. See id. In Wegeng, the trial court improperly denied the defendants' motion for continuance where the plaintiff underwent surgery one month prior to trial such that the plaintiff "knew that her condition changed after the case was set for trial and that her claim was substantially enlarged." Id. at 308. The present case is distinguishable from Wegeng because the 2006-2012 Records merely added to previously established details of Hoock's prior medical history, which had been disclosed and made accessible through executed medical authorizations. See id.; Hale, 456 S.W.3d at 489.

When viewing the evidence in the light most favorable to the ruling, we are not persuaded that SLB has met its burden to show the necessary prejudice to the outcome of the case to find that the trial court's denial of its motion for continuance was clearly against the logic of the circumstances and so unreasonable and arbitrary as to shock the sense of justice. See Macke, 591 S.W.3d at 868. Accordingly, we find the trial court did not abuse its discretion in denying the Continuance Motion. See A.L.R., 511 S.W.3d at 414. Point Two is denied.

<u>Conclusion</u>

The judgment of the trial court is affirmed.

_____
KURT S. ODENWALD, Judge

Angela T. Quigless, P.J., concurs.
James M. Dowd, J., concurs.